THE BOARD OF EDUCATION OF KANSAS CITY, KANSAS,
    v. THE CITY OF KANSAS CITY, KANSAS.

No. 11,761.    (63 Pac. 600.)

1. TITLE AND OWNERSHIP—*Dedication for Public-school Purposes Presumed from Plat.* A tract of ground belonging to a town-site company, designated as "Seminary Place" on a plat of the town site filed by such company, and on which plat is indorsed a memorandum made by the company stating that the square of ground of which "Seminary Place" forms a portion has been set apart as "public grounds," will be presumed, in the absence of sufficient contrary evidence, to have been dedicated by the company to public-school purposes.

2. ——— *Action of City Council of No Effect.* In a case as above stated, the right of the public to the use of the dedicated ground for school purposes cannot be strengthened by a resolution of the council of the city in which the ground is situated authorizing its use for such purposes; nor can such city council lawfully devote to school purposes ground which had been dedicated by the original owner to other public purposes.

Error from Wyandotte district court, HENRY L. ALDEN, judge. Opinion filed January 5, 1901. Reversed.

*Hutchings & Keplinger*, for plaintiff in error.

*T. A. Pollock*, city counselor, and *F. D. Hutchings*, city attorney, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action brought by the defendant in error, the city of Kansas City, against the plaintiff in error, the board of education of Kansas City, to enjoin the erection of a high-school building upon what the plaintiff in said suit claimed to be ground dedicated to public-park purposes, but which the defendant claimed to be ground dedicated to it for school purposes. The defendant in its answer prayed

for affirmative relief quieting its title to the disputed tract. Judgment was rendered in favor of the plaintiff, denying affirmative relief to the defendant, and, in addition, enjoining the erection of the school building.

The facts were agreed on in the court below, a summary of which was that in 1857 a number of persons associated themselves together as a town-site company, under the name of the Wyandotte City Company, for the purpose of purchasing lots and devoting them to town-site purposes. Among other things, the town-site company appointed one John McAlpine trustee to receive conveyances for it and to plat its lands and to execute deeds to its lots. In 1859 McAlpine, in pursuance of the authority conferred, platted the company's lands and filed a plat designating the streets, alleys, parks, and public grounds. On the plat was indorsed the following matter indicating a dedication of some of the grounds to public purposes :

#### "PUBLIC GROUNDS."

"The levee extending from the northern boundary of the Ferry tract to the northern boundary of the town, and from the front lots to the river, also a public square known as 'Oakland Park,' bound by Washington avenue on the north, Eleventh street on the west, Kansas avenue on the south and Tenth street on the east, said square being 650 feet long by 628 feet wide ; also Huron Place, excepting a lot on the southwest corner, one on the southeast corner, and also one on the northeast corner, which are respectively 150 feet square, and dedicated to church purposes ; also excepting so much as is occupied by the Methodist Church South, and by the burying ground adjoining said church, as represented on the map."

Board of Education v. Kansas City.

The tract now in dispute and the adjoining grounds were represented on the plat as follows :

The city of Wyandotte, the predecessor in municipal interest of the defendant in error, immediately upon the filing of the plat began to claim and exercise authority over the tract designated by the above plat, and it and its successor, the defendant in error, have continued to claim and exercise authority over it. However, the only instances of the exercise of such authority were in planting shade-trees, in allowing or refusing the use of the grounds for circus shows, base-ball playing, political meetings, and the like. These uses of the grounds under the authority of the city were made with the knowledge and without the objection of the plaintiff in error. In June, 1867, the board of directors of school district No. 1 of Wyandotte county,

the predecessor in interest of the plaintiff in error, filed with the city council the following petition:

"*To the City Council of Wyandotte:* GENTLEMEN—The undersigned school board of district No. 1 for Wyandotte county, which is the city of Wyandotte, request you, if it is not deemed inconsistent or improper, to convey to them that portion of Huron Place dedicated for seminary purposes in their official capacity for the purpose of erecting a schoolhouse thereon, in such manner as Oakland Park has been conveyed for the purpose of the state asylum of the blind."

The city council granted the prayer of the petition by resolution in the following words:

"*Resolved,* That the mayor be authorized to execute such papers as may be necessary to convey to school district No. 1 of Wyandotte county, for the erection of a schoolhouse on that part of Huron Place bounded on the east by Sixth street, on the north and south by church lots named on plat of Wyandotte city, and west by a line drawn from the western boundaries of said church lots, reserving twenty feet on the north and south sides of said land so to be conveyed."

In the month following the board of school directors addressed another petition to the city council asking an additional amount of ground for school purposes. The petition was in the following language:

"*To his Honor, the Mayor, and Council of the City of Wyandotte:*

GENTLEMEN—We, the undersigned, would respectfully represent that, if deeming it not inconsistent or improper, you could grant us an additional sixty-five feet on the back part of the ground recently granted to district No. 1 of Wyandotte county, in Huron Place, it would greatly benefit said school district and allow us the opportunity to erect the proposed schoolhouse in said district in a far more eligible situation. The land we seek will be a strip sixty-five feet wide, the length of the original grant on the west side of said tract."

. Action by the city council on the last petition was
taken, as follows :

"Mr. Washington presented a petition from the
school board of district No. 1, praying for the grant
of an additional tract in Huron Place for the same pur-
pose and on the same terms as for the tract heretofore
granted.

"Whereupon Mr. Washington moved that a strip
sixty-five feet wide and the length of said original
grant be conveyed to said school district by the mayor
for the same purpose and on like conditions as for
the conveyance heretofore made.   Carried." .

No conveyances or other writings were ever executed
by the city in pursuance of either of the above-quoted
resolutions.   The board of school directors entered
upon the grounds designated "Seminary Place" and
erected thereon a school building at a cost, as alleged
in the defendant's answer, of about ten thousand dol-
lars.   This building is indicated by the figure drawn
within the dotted lines in the plat.   The fact of the
erection of this school building was admitted in the
agreed statement, but the time of its erection was not
set forth in the statement.   The time was alleged in
the answer to have been the latter part of 1867, and
the case was discussed before us upon the assumption
of that being the correct time, and we shall therefore
accordingly consider it correct.   The value of the
school building erected, while alleged in the petition,
was not set forth in the agreed statement.   This, per-
haps, is immaterial.   It must be assumed, in the light of
other agreed facts, to have been sufficiently valuable
to evidence the expenditure of a substantial sum of
money, and to evidence in a substantial manner
claims of possessory right.   The new school building,
the erection of which the defendant enjoined, will cover
a greater area of ground than the old school building.

As to its exact location the language of the agreed statement is peculiar. It is either contradictory or ambiguous. It says: "Such new building will be erected partly if not wholly within said dotted lines, and partly within the tracts described in said resolution." The dotted lines are the lines of the irregularly shaped tract marked "Seminary Place." To say that the building will be erected partly if not wholly within such lines and partly elsewhere affords no very satisfactory idea of its proposed location. Since the city brought the injunction suit the board of education purchased a site for the high school, and has nearly completed the construction of a high-school building thereon. Previous to the date of any of the matters hereinbefore mentioned the association called the Wyandotte City Company made an entry upon its records as follows:

"WYANDOTTE, April 18, 1857.—Association met pursuant to adjournment. · Reading minutes of the last meeting dispensed with. Members present—Silas Armstrong, Joel Walker, Isaiah Walker, and Thomas H. Swope. It was moved and carried that the park, including the cemetery, be called Huron Place. Moved and carried that the church lot of the southwest corner of Huron Place be deeded to the Methodist Church South, as applied for by the Rev. Mr. Scarritt, on conditions to be attached. (Signed)
THOMAS H. SWOPE, *Secretary pro tem.*"

The above are all of the agreed facts to which it is necessary to advert. In our opinion they show that the court below was in error in refusing the affirmative

1. Dedication for public-school purposes presumed.

relief asked by the plaintiff in error and in enjoining it from the erection of its school building upon the disputed tract. The question is, Was there sufficient evidence of a dedication by the Wyandotte City Company of the

tract in dispute for seminary purposes?  The case of *Comm'rs of Miami Co. v. Wilgus*, 42 Kan. 457, 22 Pac. 615, in its facts is so nearly like the present case as to constitute sufficient authority without looking beyond our own decisions, and without undertaking to reason from general principles.  In that case a town company had filed a plat, designating on it a tract as "Seminary Square."  After the lapse of about twenty years the town company assumed to convey this square. It was held, however, that the deed passed no title; that the filing of the plat by the town company designating the tract as "Seminary Square" sufficiently evidenced an irrevocable dedication to the public for seminary purposes.  The case before us is stronger than that one.  In that case the tract dedicated had not been entered upon and used for seminary purposes. In this one the tract was entered upon and improved and used for school purposes.

The only question that could arise, and that question has not been raised, is whether the dedication for seminary purposes means for public-school purposes. We think it does.  In the case of *Comm'rs of Miami Co. v. Wilgus*, supra, it was remarked : "A seminary is certainly such a public institution that the public may take charge of and operate the same.  See our constitution and laws relating to schools and institutions of learning."  In the case of *Chegaray v. Jenkins*, 5 N. Y. 378, it was said that "a seminary of learning is a school, and a school is a seminary of learning." In the case of *Curling's Administrators v. Curling's Heirs*, 8 Dana (Ky.) 38, 33 Am. Dec. 475, it is held that "'a devise to a public seminary is a valid charity,' and see the definition of the word 'seminary' in any of the dictionaries."  It cannot be claimed that the dedication for seminary pupposes was a dedication to a

private or denominational school of learning, because, if so, to what school or in the interest of what denomination was the dedication made? It will be observed that the tract designated on the plat for seminary purposes is a part of that which in the memorandum indorsed on the plat was designated as "public grounds." This is conclusive evidence that the seminary purposes contemplated by the donors were to be public-school and not private- or denominational-school purposes.

In order to trace the history of the tract of ground represented by the above plat, and to show as to it the passing of a somewhat general and indefinite intention of the original proprietors into one of specific and settled character, it will be important to note the action taken by such proprietors at several times, as evidenced by some of the matters above quoted. It would seem that by the minutes of the town-site company dated April 18, 1857, the tract of ground now called "Huron Place" had been intended as a park, because on that day it was ordered that "the park, including the cemetery, be called Huron Place." How much ground was covered by the tract theretofore called "the park," and thereafter to be called "Huron Place," was not shown. Presumptively it covered the entire square—not only that which was designed for general public purposes but also that which had been set apart or was intended to be set apart for specific public purposes. The cemetery grounds, which had theretofore been included under the designation "park," were still to be included under the new name of "place," and a certain corner of the old "park," or new "place," was to be given to the Methodist Church South. It is fair, therefore, to assume that the entire square, including

those portions of it dedicated to special public purposes, was to be designated as "Huron Place." In 1859 a town-site plat was filed. On this plat Huron Place was listed under the head of "Public Grounds," excepting the cemetery and lots on the four corners dedicated to church purposes. This memorandum of public grounds made no exception of any portion of Huron Place for school purposes, but the plat itself made such exception by noting the irregularly shaped tract before spoken of as "Seminary Place." Now, seminary or school purposes are public purposes in the most emphatic and significant sense, and it was entirely proper for the donors to omit under the designation "Public Grounds" that portion designed for school purposes. Had they put Seminary Place in the list of exceptions out of the public grounds, as they did the cemetery and church lots, they would have contradicted themselves in meaning and would have confused every one as to their real intention. It would, of course, have been proper for them to have noted, under the list of public grounds, that portion of Huron Place which they designed for seminary purposes. This, however, they did, but in another way; they did it by indicating it on the plat and calling it "Seminary Place."

We do not attach importance to the petitions of the school authorities for the allotment and conveyance 2. Action of council of portions of the disputed tract for of no effect. school purposes, nor the resolutions of the city council granting the prayer of such petitions. They did, however, evidence a recognition by the city authorities of the fact that some of these grounds were rightfully devoted to school purposes, but in our judgment the school authorities did not by such action acquire any rights they did not already

possess, nor did the city lose any rights which up to that time it possessed. The right to lands dedicated for public purposes is acquired from the dedicators and such right is likewise limited in territorial extent by the boundaries of the donors' grant. In this case the donors granted nothing but the tract called ''Seminary Place.'' The adjoining grounds, although donated by the same persons, were dedicated to other public purposes. For what public purposes the adjoining grounds were dedicated is immaterial. It is sufficient that they were not dedicated to seminary purposes. A dedication to such purposes of a particular portion of the general tract implies that no other portion of such general tract was intended for the one specific public purpose ; hence, the city authorities, in so far as they attempted to grant portions of Huron Place outside the particular tract designated as ''Seminary Place,'' undertook that which they could not rightfully do, viz., to divert the donors' grant to uses other than those designed by them.

''After a complete dedication of lands to public uses has been made, neither the dedicator nor the municipal authorities may apply them to other uses. It is only by the assent of all those for whose benefit the dedication was made—that is, the local lotowners whose private interests are affected, and the town authorities, as representatives of the public interests— that any change can be made.'' (9 A. & E. Encycl. of L., 2d ed., 80.)

One V. J. Lane, who was made a party to the action in the court below, testified that he had resided in Wyandotte county since 1857 ; that he was acquainted with the members of the Wyandotte City Company ; that they repeatedly stated to him that they had dedicated Huron Place for public use as a park, and never stated that they had dedicated any part of it for school

purposes. He further testified that he had purchased property abutting on one of the streets bounding Huron Place, and that his principal reason for doing so was that Huron Place was a park. This evidence was introduced for the purpose of showing that private rights had been acquired upon the faith of the dedication of Huron Place as a public park, and that such rights would be impaired by its diversion to other purposes. We do not stop now to inquire whether evidence of conversations with the original donors was admissible. It is sufficient to say again that the intention of the donors of the disputed tract of ground to devote such tract to school purposes, as evidenced by their public and recorded acts, is, and at the time testified to by Mr. Lane was, manifest.

The judgment of the court below is reversed, with directions to ascertain the location and boundaries of the tract designated as "Seminary Place," and to refuse the injunction restraining the erection of the school building on such tract, and to quiet the title of the plaintiff in error thereto as against the defendant in error.