THE VILLAGE OF RIVERSIDE

*v.*

GEORGE A. MacLAIN *et al.*

*Opinion filed June 23, 1904.*

1. DEDICATION—*what constitutes an irrevocable dedication.* The sale of lots with reference to a plat showing lots, blocks, streets, alleys and public parks or commons, renders irrevocable the offer of dedication of such streets, alleys, parks or commons shown upon the plat, notwithstanding there was no municipal corporation in existence which could accept the dedication at the time it was made.

2. SAME—*effect where municipal corporation is subsequently organized.* Subsequent organization of a municipal corporation out of territory embracing a platted tract in which lots have been sold with reference to the streets, alleys, parks and commons shown thereon, constitutes the municipality a trustee for the public to the extent of the dedication.

3. SAME—*when a municipality is estopped to deny the tract is a public park.* A municipality is estopped to deny that a tract within its borders is a public park, where it was organized after the common law dedication of the tract to the public by the owner, and by its

subsequent acts and ordinances recognized and treated the tract as a public park.

4. SAME—*right of lot owner to have dedication preserved.* Purchasers of lots bordering upon a tract dedicated by the owner as a public park, and decreed to be a public park in a proceeding instituted for that purpose by the municipality, have an easement in the tract, which they have a right to maintain, as against the municipality, by having the tract preserved as a park.

5. SAME—*when city has no power to convert portion of park into highway.* A city has no power to convert into a public highway any portion of a tract of land which has been accepted and adjudicated to be a public park under a common law dedication from the owner for that particular purpose.

6. SAME—*statutory provisions concerning parks refer to parks created by municipal authorities.* The statutory power of municipal authorities to construct streets or pleasure driveways in parks is confined to parks created by the municipality under statutory provisions, and does not extend to parks created by common law dedication.

7. INJUNCTION—*when damage or injury need not be shown.* Parties purchasing lots bordering upon a tract of land consecrated to the purpose of a public park by common law dedication of the owner, are entitled to enjoin the construction of a highway through such park by the municipality in violation of its duties as trustee, without showing damage or injury to their lots.

APPEAL from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is a bill, filed in the superior court of Cook county on September 24, 1903, by appellees as complainants, who were owners of certain lots in block 4 of the first division of Riverside, against the village of Riverside as defendant, to restrain the latter from opening an alleged highway, intended, as is claimed by appellant, to be a pleasure driveway, but intended, as is claimed by appellees, to be a public road and highway, across a strip of land lying immediately north and west of said block 4, south of the right of way of the Chicago, Burlington and Quincy railroad and east of the DesPlaines river, upon the ground, as is charged by appellees, that the premises in question are a public park and common, and were so dedicated by the Riverside Improvement

Company, and adjudged to be such, and accepted and used as such by the village of Riverside, and relied upon as such by the appellees in the purchase of their lots in block 4, and so represented upon the recorded maps and plats of the subdivision. The bill charges, in substance, that the opening of the proposed highway or driveway will, under the circumstances, constitute a diversion of the property from the original purpose, to which it was dedicated, and a misuse of it to the detriment of the appellees, and against their vested rights and easements. The bill was answered by the appellant, the village of Riverside, denying the material allegations thereof, and to the answer replication was filed.

Upon the hearing of the cause, testimony oral and documentary was introduced; and on June 20, 1903, a final decree was entered, in which the court found that the appellees, complainants below, were the owners in fee of their respective lots as described in the bill, and derived their respective titles thereto by *mesne* conveyances from the Riverside Improvement Company at the times and in the manner set forth in the bill; that the premises, described in the bill as "Tract B," to-wit: the premises, bounded by the south line of the right of way of the Chicago, Burlington and Quincy railroad on the north, Bloomingbank road on the east and south, and the river on the west, all in the village of Riverside, were dedicated in 1869 by the said improvement company, the then owner thereof, by common law dedication for a public park and common, and have since been and are now public park and common; that the lots of the appellees abut on said public park and common; that appellees purchased and acquired their lots after the dedication of said public park and common, and in reliance upon the dedication thereof; that the village of Riverside was organized in 1875 as a municipal corporation, and then recognized said dedication of said premises, known as "Tract B," as public park and common, and

has since treated and cared for the same as public park and common under and in accordance with the said dedication; that said premises have heretofore, at the suit of said defendant, the village of Riverside, been claimed as public park and common, and been adjudged and decreed to be public park and common; that the said premises, referred to as "Tract D" in said bill, are a part of the premises, described as "Tract B," and are part and parcel of said public park and common; that complainants below purchased their respective lots for residence purposes prior to August 28, 1900, in full faith that the said tract B and tract D would be forever held sacred to the public uses, for which they were dedicated as public park and common, as places of resort for amusement and recreation; that the village of Riverside is estopped to make or assert any use of tract B, or any part thereof, except as public park and common; that the proposed use by said village of that portion of tract B, described in the bill, as a street, or as a public highway, or as an extension of West avenue, or any street or highway in said village, is unlawful, unwarranted and illegal, and inconsistent with the uses and purposes, for which the said tract B was originally dedicated and is now used and held; that the ordinance, passed by said village on August 28, 1900, amending a previous ordinance of the village, approved August 24, 1875, which prohibited riding or driving over or across any public park, road, border, common or ornamental pleasure ground, by adding thereto the following words, "provided that the strip of ground fifty feet in width and included between the east and west lines of West avenue, in the village of Riverside, extended south from the southern terminus of said avenue to Bloomingbank road, may be used for the passage of pleasure vehicles and pedestrians," is null and void and of no effect, and that the proposed enforcement thereof by the village and its officers was illegal and unlawful, and in violation of the duties and obligations,

assumed by said village by the dedication and use of said tract B as a public park and common, and in violation of the rights of appellees, complainants below, in said public park and common; that said appellees, and each of them, have an easement in said public park, and the right to have the same devoted perpetually to the uses and purposes, for which the same was dedicated, and no other purpose, and that the extension of said proposed street and highway over and upon said public park and common, and the construction of the roadway thereon, and the removal of the trees and shrubbery thereon, as proposed by the said defendant, are without authority of law; that the equities of the case are with the complainants below, and that the material allegations of the bill are true, and that said complainants are entitled to the relief prayed for; and in said decree it was thereupon adjudged and decreed that the defendant below, the village of Riverside, its officers, servants, agents and employes, should be, and were thereby perpetually enjoined and restrained, unless thereafter lawfully thereunto authorized, from in any way extending or attempting to extend the said West avenue, or any other street or highway at the location thereof across, along, upon or over the said tract B, and from in any way laying out, opening or extending, constructing or attempting to lay out, extend or construct said street, road or highway upon or across said tract B, and that a writ of injunction issue to that effect; and that complainants below recover costs from the defendant below. To this finding and decree the defendant below excepted, and the present appeal is prosecuted from the decree so rendered.

The following plat is a copy of "Exhibit A," attached to the bill, and sufficiently illustrates the location of block 4 with the twenty-one lots, into which the same is subdivided, together with the tract, or public park and common, across which it is proposed to extend West

avenue, as indicated below.   The portions which in the
original map were colored green are represented by the
shaded parts of the map printed herewith.

The dotted lines show West avenue as proposed to be
extended.   The shaded portions show park.   The black
lines show tract D.

AMOS C. MILLER, and RALPH CREWS, for appellant.

FRANK F. REED, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

After a careful examination of the record, plats, maps
and evidence we are of the opinion, that the testimony
sustains the findings of the court below, and that the
decree entered by it is correct.

About March 1, 1869, the Riverside Improvement Company, incorporated under a special act of the legislature of Illinois for the purpose of establishing a suburban town, became the owner of the south half of section 25, and the whole of sections 35 and 36 in township 39 north, range 12, east of the third principal meridian, except that part lying south of the DesPlaines river, and also of some parts of sections 1 and 2 in township 38, which lands were included within the outlines of maps and plats hereinafter mentioned, and included said block 4 and said tract B.   The lands acquired lay to the east and west of the DesPlaines river in its north and south course.   The Chicago, Burlington and Quincy railroad ran east and west, and a little south of west, through the tract and across the DesPlaines river.   Immediately north of the railroad tracks was a tract of land, marked upon the plat "Land not belonging to the company," which was not owned by the Riverside Improvement Company, and which at that time was not subdivided. North, however, of this unsubdivided tract was a tract, purchased by the company subject to a mortgage, which was afterwards foreclosed, and all the title of the Riverside Improvement Company was thereby eliminated. The latter tract was platted, and subdivided into roadways and parks upon the same plan as the land south of the railroad tracks.   The tract here in controversy, and alleged to be a park or a part of a system of parks inaugurated by the improvement company, lies south of the railroad tracks and north and west of block 4 in which the lots of appellees are located.   Subsequently, the northern part of the unsubdivided tract, lying north of said railroad tracks, was subdivided into lots and blocks and streets, and called "Beebe's Central Riverside addition;" and the southern part of said tract was subsequently subdivided into lots and blocks, etc., and called "Wessencraft's Homestead addition."   The street lying north of Wessencraft's addition, and running east and

west, was designated as Forest avenue. From Forest avenue, West avenue runs south, as designated upon the plat in the statement preceding this opinion. West avenue runs southward as far as the north line of the railroad tracks. West avenue is a street fifty feet wide, and, where it strikes the north line of the railroad right of way, is about two hundred and thirty-four feet from the bank of the DesPlaines river on the west side of the street. It was dedicated as a public street, and has always been used as such. By an ordinance of the village, dated January 3, 1898, West avenue was extended across the railroad right of way to the park marked "Tract B," including tract D, in pursuance of condemnation proceedings thereupon instituted. By the ordinance of August 28, 1900, amending the ordinance of August 24, 1875, it was provided that a roadway should be constructed for pleasure vehicles and pedestrians by the extension of West avenue south across the park, marked "Tract B," to Bloomingbank road running south of said park and north and west of block 4. The extension of West avenue across the park marked "Tract B" is what is sought to be enjoined and prevented by this suit. All the property, including block 4 and the park marked "Tract B," including tract D, here in controversy, lies in the first division of Riverside.

*First*—The first contention made by the appellant is that the lands lying between said block 4 and the said railroad are not "public park." This contention cannot be maintained under the proofs in this case.

It appears from the written stipulation of facts, entered into by counsel and introduced upon the trial of the case, that the Riverside Improvement Company in March, 1869, as owner, subdivided and made a plat of the first division of Riverside and collected all the maps, showing the different divisions, into one map, and that this map showed the blocks, lots, parks and commons,

and was hung in the offices of the Riverside Improvement Company in Chicago and Riverside; that the company sold the lots with reference to the same; made accurate surveys of the lots and blocks and parks platted into three divisions; recorded the plats on September 21, 1869; placed the recorded plats in its offices and offered and sold lots with reference to the maps and plats; that the said recorded plats showed the parks, lawns, banks and margins as places colored green, (being the shaded parts in the accompanying plat,) and the parts so colored green were declared by the Riverside Improvement Company to be dedicated to public use, and were so dedicated. It also appears from the stipulation and evidence that the Riverside Improvement Company continued to exhibit the recorded plats and maps referred to, and to distribute lithograph copies of the same, showing the public parks, river banks, islands, margins and commons, and represented that the places colored green were dedicated as parks and commons to public use; that, by means of such representations, many persons were induced to purchase lots in the first, second and third divisions, including the lots now owned by appellees; that appellees purchased and acquired their lots for valuable consideration, in good faith, and with full knowledge of the suits, decrees and records hereinafter set forth, which were in existence at the time of their respective purchases; that, after the fire of 1871 which destroyed all of the original recorded maps, and also the records thereof, the Riverside Improvement Company prepared and recorded plats, which, while they do not show as colored green the portions, dedicated to the public as parks by the original maps, yet show the park portions as blank and unsubdivided premises; it also appears from the stipulation and evidence that the village of Riverside, when incorporated in 1875, accepted the dedication of the parks and commons, and assumed the custody thereof.

In addition to this the town of Riverside in 1872 filed a bill, in which it recognized in general terms the dedication and the existence of the parks and commons, indicated in the original recorded plats and exhibited and distributed maps.  On September 17, 1885, the village of Riverside filed its original bill of complaint against the Riverside Improvement Company, Henry L. Glos *et al.*, for the purpose of establishing by judicial proceeding the system of parks and commons, created and dedicated by the Riverside Improvement Company, in which suit a decree was entered on April 4, 1887, which established as a complete system all of the parks dedicated originally by the Riverside Improvement Company, including the premises in question, as public park and common, and this decree found that the company hung a map in its office and circulated among the people a map of the lands and subdivision thereof, showing blocks, streets, lots, parks, public grounds and commons, and distributed lithographic copies of the same in large numbers among the people, and showed the same to prospective purchasers of residence sites; and that the map so circulated showed in conspicuous colors the parks, commons and public grounds, which the owners of the sites proposed to dedicate to the public forever for the use of prospective purchasers and residents.   The decree finds that, after the making of the original plat and the publication of the said maps and the recording of the plat, the company sold large numbers of lots to divers persons who are now living thereon, and that the sales were made under the representation that the parks, commons, etc., as indicated on the maps, were dedicated to the public use as streets, public grounds and commons, and in connection with the making of the sales the company improved the streets and margins, and laid off the parks and public grounds, and were in the habit of taking parties on the grounds and pointing out the places indicated as parks and public grounds, and representing that the

places, so colored and indicated on the maps and pointed out, were dedicated to public use. The decree also finds that the number of persons, who purchased lots on the faith of the aforesaid representation, were about two hundred, and that the particular property, grounds and commons, which were represented by the Riverside Improvement Company to proposed purchasers to be public grounds and commons and to have been dedicated, are, besides certain parks and commons not here in controversy, the tract B, including tract D, as above described, and the other small parks and roadways lying east thereof and south of the railroad tracks, as shown upon the plat set forth in the statement preceding this opinion. The decree also finds that a large number of persons, who purchased lots, improved the same, and became residents thereon relying upon said dedication, and accepted and enjoyed the benefit for public purposes of the pleasure grounds, and the streets, commons, and parks, and were using the same when the village was organized. It also finds that the village, by its officers, assumed charge of the streets, parks and commons, and held the same for public use, and has since exercised authority over the same, and improved the same. The decree also finds that the population of the village then numbered five hundred persons, who have enjoyed the streets, public parks and commons, and that the streets, parks and commons were dedicated by the Riverside Improvement Company for public use before the incorporation of the village by common law dedication, and that the community accepted the same, and that the same were then held by the village by common law dedication. And in the decree it was thereupon adjudged that said parks and commons were dedicated to the public use by a common law dedication, and that the village of Riverside in July, 1875, accepted and received said streets, parks, highways, etc., and held and had the right to hold the same by common law dedication, and had the right

to control the same for the benefit of the public for the purpose of carrying the dedication into effect.

Again, on December 21, 1888, the village of Riverside filed a bill against Patrick Ronan, who had built an icehouse upon tract B, and in the suit, commenced by the filing of such bill, the village of Riverside asserted said tract to be a public park and common, and procured a decree, adjudging it to be a public park and common. At the same time the village of Riverside instituted a suit against one Charles Moeschler, which ripened into a decree, where it asserted the same positions as to original dedication of the entire park system, as were asserted in the suits against Glos and Ronan.

In addition to these suits and decrees, and in addition to the facts proven and admitted by the stipulation, the village on August 24, 1875, passed an ordinance, forbidding any driving, riding, or passing over public park, road, border or common; and on October 8, 1888, passed an ordinance, declaring all buildings and other structures by private persons on such property to be nuisances.

The evidence and facts above recited show a complete common law dedication of the premises in question as public park and common. They demonstrate that the land, sought to be appropriated for the driveway, is public park and common, and has always been so recognized from the year 1869 by adjacent lot owners, the municipality, and the public generally. Appellees purchased in reliance upon these facts, and appellant, by its acts, declarations, ordinances, suits and decrees, has recognized, and acquiesced in, the dedication, and has never attempted to repudiate it, but has actively sought to establish it and enforce it not only as to other parks, but as to this identical tract here in controversy.

The law applicable to the facts above set forth is well settled. Where one, who owns lands, lays off a town or village thereon, and makes a map of the town site, showing it to be divided into streets, alleys, blocks and lots,

and then sells with reference to such map, he thereby makes an irrevocable dedication of the space, as represented on the map as streets, to the use of the public. And if there be public squares or places represented on the map, the same rule applies to them, and dedication thereof may be established in the same manner. · (*Clark* v. *McCormick,* 174 Ill. 164; *Zearing* v. *Raber,* 74 id. 409; *United States* v. *Illinois Central Railroad Co.* 154 U. S. 225; *Town of SanLeandro* v. *LeBreton,* 72 Cal. 170).

In such case, it makes no difference that no municipal corporation, which could accept the dedication, exists at the time the dedication is made. It is enough that the lots are offered, sold and bought with the understanding that the designated portions are public parks and commons. The municipality, which in the case at bar was the village of Riverside, upon its subsequent organization, becomes the trustee of the public to the extent of the dedication. Here, the acts, care, ordinances and decrees show that the village of Riverside accepted this tract as public park, and is estopped both by the original dedication and its own conduct from denying that the tract is public park. (*Village of North Chillicothe* v. *Burr,* 185 Ill. 322; *Waggeman* v. *Village of North Peoria,* 160 id. 277; *McDonald* v. *Stark,* 176 id. 456; *Conkling* v. *Village of Mackinaw City,* 120 Mich. 67; *Marsh* v. *Village of Fairbury,* 163 Ill. 401). In *Marsh* v. *Village of Fairbury, supra,* it was said (p. 407): "But in connection with these public rights those, who purchased lots fronting on this park, took with reference to the plat, and had an appurtenant right therein, which was their own property as a right appurtenant, and that was to have the streets and block 10 remain open for public use. The vendor, or those privy to his title, would, by his acts in platting and selling lots by this plat, be estopped from enclosing block 10 as private grounds. Such being the case, the question as to whether or not the village authorities accepted the dedication of that block would not defeat the right of indi-

vidual purchasers from asserting their rights to have the same open forever for the use of the public." (*Earll* v. *City of Chicago*, 136 Ill. 277). In the case at bar, the evidence shows that appellees purchased their respective lots, relying upon the existence of this tract of land as a public park, and that it should always remain such. Nearly all of the appellees as lot owners purchased their lots after one or more of the decrees had been entered in the suits already referred to, begun by the village, which declared the entire park to be a public park; and they relied upon this fact as appearing of record. Each lot has an easement in the park, and, in order to maintain this easement, it is necessary that the tract in question should be preserved as a park. (*Smith* v. *Heath*, 102 Ill. 130; *St. P. & P. R. Co.* v. *Schurmeir*, 74 U. S. 272; *Archer* v. *Salinas City*, 93 Cal. 43). In the latter case of *Archer* v. *Salinas City*, it was said: "The same principles, which are applicable to the dedication of public streets, apply to the dedication of a public park or square. All dedications for public use are to be considered with reference to the purpose for which the dedication is made, or the use to which the property dedicated may be applied, and that purpose may be ascertained by the designation which the owner has affixed to the land upon the map, whether it be a street, a school lot, or a public park. The setting apart of a public park upon such map is for the convenience and enjoyment of the inhabitants of the place, and, as it enhances the value of the private property fronting thereon, so the owner who has dedicated it is presumed to have received, in the increased prices for which that property was sold, the compensation for its surrender to the public as a park. * * * Dedication may be express and completed by a single act, as when the land is dedicated by deed; or it may be implied from a series of acts, as when the owner subdivides a tract of land into blocks and streets, and causes a map of such subdivision to be recorded, and sells the several subdivisions which

front upon those streets. Whenever the dedication is complete, the property thereby becomes public property, and the owner loses all control over it or right to its use."

We are of the opinion, that there was a common law dedication by the Riverside Improvement Company of the tract in question as a public park for purposes of recreation and amusement, and that an easement of that character immediately arose and became appurtenant to the lots of appellees and can be enforced by them, especially as the evidence shows that the village has expressly and repeatedly recognized such rights, and endeavored as trustee to protect and establish them.

It is claimed that towards the western extremity of the park the lithographic maps, which were circulated, showed a roadway or passageway of some kind curving along the river bank. This fact is dwelt upon, as showing that the intention of the original dedicator was, that a road, extended from the north through the unsubdivided tract across the railroad tracks, should at some time be connected with such roadway or passageway curving along the river. If this were so, West avenue extended south is not so extended as to connect with any such roadway or passageway, but crosses the railroad track a long distance east of any place where such roadway or passageway is indicated upon the lithograph maps. If West avenue is extended across the park here in question in the manner, in which the village of Riverside proposes to extend it by the ordinance of August 28, 1900, it will cut the park designated as "Tract B" into two parts, as shown by the dotted lines across the east end of tract D. It appears from the evidence that the park, marked "Tract B," is about one hundred and twenty-five feet wide, and not more than four or five hundred feet long. The extension of West avenue over it thus divides it into two portions, so small as to destroy not only its beauty, but its usefulness as a park to the lot owners, whose residences abut upon it. If

roadways are indicated upon the plats as recorded and upon the lithographic maps as shown to the purchasers, then it was the intention of the dedicator that such roadways should run as therein indicated, and not that new roadways should be cut dividing the property into still smaller parts or portions.   No passageway indicated upon any plat, which was used in the sale of lots, can be located at the point of the crossing now proposed to be made by the village.

*Second*—It is claimed on the part of the appellant that, even if the premises in question are a public park or a public common, or both, nevertheless the use of a strip across it for the purposes of a pleasure driveway will not be a misuse of said public park or public common.   This contention gives rise to the question, whether the proposed use of the park by the construction of a roadway through the same, resulting from the ordinance of August 28, 1900, will, under all the circumstances, be a misuse of the premises as a park.

It is not altogether clear that the roadway, if extended from the south line of the railway right of way across this park, will be a pleasure driveway.   As has already been stated, the village has already extended West avenue over the railroad right of way to the north line of this park by condemnation.   But this extension of West avenue, as we understand the evidence, was its extension as a public street or highway, and not as a boulevard or pleasure drive.   There is nothing to show that West avenue, if extended across this park, would be restricted in the use to be made of it to a mere pleasure driveway.   The evidence shows that, under some arrangement between the village and the railroad company, the grade, where this crossing is to be made, will be raised between four and five feet above the level of the park.   An unsightly elevated roadway will thus be created through what has been a park, planted with trees and shrubs and cared for as such.   It is not to be sup-

posed that persons, driving for pleasure, would attempt to drive a distance of one hundred and thirty-five feet more or less up or down an inclined plane, and over a complicated and dangerous railroad crossing.

The evidence establishes the conclusion, that the extension of West avenue over this park will be a perversion of the use, for which the premises, embraced in the park, were originally dedicated. They were originally dedicated for the purposes of a park, and not for the purposes of a traveled roadway cutting so small a park into two parts. A park is a "place for the resort of the public for recreation, air and light." (*Price* v. *Plainfield*, 40 N. J. L. 612). "A park is a piece of ground in a city or village set apart for ornament or to afford the benefit of air, exercise or amusement." (17 Am. & Eng. Ency. of Law,—1st ed.—p. 407). The title to these premises is vested in the village of Riverside, as trustee for the public, and the uses, to which the premises may be devoted, are limited to uses as a park and common. A deviation from such use by the village is a violation of its duties, as trustee for the public, and will result in damage to the property of appellees, and destroy their easement in the park. Where a park is thus cut up by the extension of a street through its middle, its use for purposes of pleasure, recreation and amusement will be destroyed. Where such a tract has been dedicated, and accepted as a public park, and adjudicated to be such, the municipality has no power to convert any portion of it into a public highway, because such use is inconsistent with and destructive of its use as a park. (*City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540; *Village of Princeville* v. *Auten*, 77 id. 325; *Guttery* v. *Glenn*, 201 id. 275; *City of Chicago* v. *Ward*, 169 id. 392; *Board of Education* v. *Kansas City*, 62 Kan. 374; *City of St. Paul* v. *Chicago, Milwaukee and St. Paul Railway Co.* 63 Minn. 330; *City of Llano* v. *Llano County*, 5 Tex. Civ. App. 132; *Price* v. *Thompson*, 48 Mo. 361; *United States* v. *City of Chicago*, 7 How. 185; *Wellington, Peti-*

*tioner*, 16 Pick. 87).  In *City of Jacksonville* v. *Jacksonville Railway Co. supra*, it was held that a dedication must always be construed with reference to the object, with which it was made, and that, where streets are dedicated by means of a town plat, they will be considered as designed for the purpose of travel and passage in any mode not to destroy their usefulness, while a public square will be considered as intended for beauty and adornment, and for the health and recreation of the public, and the municipality will have no right or power to divert it to other uses or purposes; and in that case it was said (p. 543): "Streets and a public square are donated. Each has a well known and well defined use and meaning. The one was designed for the purpose of travel; and the right of passage over the streets in any mode not to destroy their usefulness was given by the plat. The square was intended for beauty and adornment, and for the health and recreation of the public. A dedication must always be construed with reference to the object with which it was made. The donors never could have intended that this ground should be used as a street. The power of the legislature to repeal the charters of municipal corporations cannot be extended to the right to divert property, given to the public for one use, to a wholly different and inconsistent use. The power cannot exist to divert property from the purpose for which it was donated. This plat was a solemn dedication of the ground to the corporation, to be held in trust for the use of the public. The donation was made for a certain specific and defined purpose.  *  *  *  The city has accepted the trust. It must be preserved, or the land must revert to the original proprietors. The city has acted in good faith. It has enclosed, planted with trees and improved and embellished the ground dedicated, and thus maintained the purpose of the donor. Lots abutting upon the square have been purchased and built upon with reference to it. They have also been made more valuable by this open

ground in front of them. A court of equity has the right to enforce the execution of the plainly declared trust, either upon the application of the owners of lots abutting upon the square, or upon the application of the city, the trustee. * * * The square is valuable property, intended for the use of the public and appurtenant to the estates of the abutting lot owners, and the trustee must be permitted to preserve it for the expressed and intended purposes of the trust. * * * In *Price* v. *Thompson,* 48 Mo. 361, the trustees of the town were about to open a public park, and run streets through it. The original owner of the land, upon the plat of the town, designated four acres as a park. The language of the statute of Missouri, in declaring the effect of the plat, is identical with our own. The court enjoined the trustees, and held that the park should ever remain public, and in the condition in which it was donated." By the language used in the case of *City of Jacksonville* v. *Jacksonville Railway Co. supra,* this court endorsed the doctrine of the case of *Price* v. *Thompson, supra,* to the effect that the running of a street through a public park is a misuse of the land, embraced in the park, and a diversion of the same from the purposes for which it was originally dedicated. The doctrine of this case is precisely applicable to the facts in the case at bar.

In *City of Chicago* v. *Ward, supra,* it was held that, where the intention, that a certain square should forever remain an open space, had been expressed on the plat, or even in contemporaneous certificates, the village trustees could not lawfully appropriate it to any other public use, and it was there said: "It would have been an abuse of the trust reposed in them that the courts would not hesitate to control, that the property might be preserved for the uses intended by the donors." And it was also said in that case, that "it is only where the dedication of the property as public ground is an unrestricted dedication to public use that the city or legislature may

designate the uses to which it shall be put." Such is the distinction between the case of *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 Ill. 25, and the cases of *City of Jacksonville* v. *Jacksonville Railway Co.* and *Village of Princeville* v. *Auten, supra.* In the case at bar, there was no unrestricted dedication of the premises in controversy to such general public use as might include any public use, but the dedication of it was restricted to the purposes of a park, and the extension of a public highway through it would be a diversion of it from the original purpose for which it was dedicated.

It is established by the authorities referred to, that, where property is consecrated to public use by common law dedication of the owner, the municipality, within whose borders the premises are situated, takes it, as trustee for the public, for the special uses designated by the dedicator. Here, the uses, for which the premises in controversy were dedicated, were for the purposes of a public park and common, and for the recreation and amusement of the public. These uses were not only declared by the dedicator, but they were assented to by the village, and established by the various decrees in the suits, instituted by it, as above referred to. It results that the village cannot employ these premises or any portion of them for any additional purpose, such as putting a highway through them. The construction of such a highway across them is not devoting the same to the purposes of recreation and amusement. Moreover, such a highway is not necessary to reach the park, which can be done through other roadways designated upon the original plat or map.

A distinction is to be made between cases where a public square is dedicated without restriction, and cases where the dedication is restricted to a particular purpose. In the former case, any reasonable public use may be made of the square, but in the latter it must be devoted to the particular purpose indicated by the dedi-

cator. Where land is dedicated for a public park and common, it cannot be said that the construction of an elevated driveway, amounting in fact to nothing more than an approach to a railroad track, and only a little over one hundred feet long, is an act which amounts to keeping the park open for purposes of recreation and amusement. A distinction is also to be observed between cases, where the facts show that a public park has been created and established by a municipality under statutory provisions, and cases where the land has been dedicated for the purposes of the park by the original owner thereof. A pleasure driveway may be a legitimate feature of a public park created and established by a municipality, but in a dedicated park it is always a question of the intention of the donor. The latter class of parks cannot be cut up at the pleasure of municipal bodies, or by virtue of any statutory authority. The provisions in the statute in relation to parks, to which counsel for appellant refer, clearly relate to parks, created by a municipality or park commissioners, and not to parks dedicated at common law. Several cases are referred to by counsel, where a board of park commissioners are expressly given by statute exclusive powers over parks, and vested with absolute discretion to improve and maintain the same, as in their judgment may seem proper; in such cases, the board cannot be enjoined by a tax-payer on the ground of improper expenditures of public moneys from constructing speedways, or other kinds of pleasure driveways. (*Holtz* v. *Diehl*, 56 N. Y. Sup. 841). Such cases, in which parks are created under statutory authority, and park commissioners have the fullest power to regulate the use of the park, and to ornament and to do anything that they choose in their discretion with reference to it as a park, have no application to the case at bar, where the park was dedicated as such by the original owner of the land, and where the purpose of the dedication, as indicated by the owner, must be carried out.

*Third*—It is further claimed on the part of the appellant, that the present bill will not lie upon the alleged ground that appellees have failed to show any damage to their property by reason of the construction of the proposed driveway over the park.

There is evidence, tending to show that there would be special damage and injury to the lots of appellees by the misuse of the park in the manner proposed. But if this were not so, we do not deem it necessary that damage or injury of any kind must be shown, in order to justify a suit of this character. Appellees, as abutting property owners, are entitled, under the circumstances of this case, to an injunction restraining the village from violating its duties as trustee and perverting the purposes of dedication. It has been held that a bill or suit may be maintained by an individual in respect to a public street or highway where there is a special trust in favor of an adjoining property holder, as well as where there is a special injury. (*Earll* v. *City of Chicago*, 136 Ill. 277). Where privileges of a public nature, and yet beneficial to private estates, are secured to proprietors contiguous to public squares or other places dedicated to public uses, equity will afford a remedy by injunction. (2 Story's Eq. Jur. sec. 927; *Newell* v. *Sass*, 142 Ill. 104).

In *Maywood Co.* v. *Village of Maywood*, 118 Ill. 61, it was held that, after the dedication of a block in a village to the public for a park, and the sale and conveyance of lots on the faith of such dedication, the original proprietor, though still holding the legal title to the block dedicated, would not be allowed to divert his trust by mortgaging the property, and that, if he did mortgage the property to parties having notice of the public interests therein, a court of equity would set the same aside at the suit of the corporate authorities and lot owners interested; and it was there said (p. 72): "A court of equity has jurisdiction to entertain the bill filed in this case. As a foreclosure of the trust deed would prob-

ably result in the ownership of the 'park' by private parties, there was a threatened perversion of the trust upon which the property was held. Equity will interpose to prevent the perversion of a trust. (*City of Jacksonville* v. *Jacksonville Railway Co. supra*). Again, the evidence shows a threatened nuisance tending to deprive appellees and others of the full and free use of this park, as they were entitled to have it used. This is a well recognized ground for equitable interposition. (*Zearing* v. *Raber, supra*). * * * Small and Hubbard, as residents of the village, have a common interest with each other and with the village itself in preventing any obstruction to the use of the public square for the purposes of a park. * * * They are, therefore, properly joined with the village as complainants."

In *Brown* v. *Manning*, 6 Ohio, 298, which was a suit to enjoin the proprietors, who dedicated the land to public use, from appropriating to private use a square included in the dedication, the court say: "It sufficiently appears that the plaintiff is one of the inhabitants of the town, living and holding property contiguous to the square, the value of which is affected by the dedication. He is, therefore, not a volunteer assuming to protect the rights of others, but entitled to this remedy for the protection both of his individual and of his common interests." (*Davenport* v. *Buffington*, 1 Indian Ter. 424.)

Under the authorities thus referred to the present appellees had a right to file the present bill for an injunction, inasmuch as a special trust existed in the village of Riverside in their favor as adjoining property holders. They are seeking here to prevent the perversion of a trust, and upon that ground equity will interpose in their favor.

The decree of the superior court of Cook county is affirmed.    *. Decree affirmed.*