McCLINTOCK, APPELLANT, v. CITY OF GREAT FALLS
ET AL., RESPONDENTS.

(No. 3,968.)

(Submitted January 22, 1917. Denied February 1, 1917.)

[163 Pac. 99.]

*Cities and Towns—Indebtedness—Injunction—Water Plants— Constitutional Limitations — Legislative Construction — Revenues—Surplus Funds—Disposition.*

Cities and Towns—Indebtedness—Taxpayer's Suit—Injunction.
  1. The interest a taxpayer has in a proposed city bond issue is sufficient to entitle him to bring suit to enjoin the expenditure of public funds if the city threatens to make unlawful use of them.
  [As to taxpayers' actions, see note in **Ann. Cas. 1913C**, 892.]

Same—Expenditures—What Constitutes Cash Transaction.
  2. Where a city has on hand funds available for a contemplated improvement in amount sufficient to discharge its obligations under contracts necessary to be entered into for that purpose as they mature, no indebtedness is contracted—it is a cash transaction.

Same—Procuring Water Supply—Additional Indebtedness.
  3. A city had a water supply sufficient in quantity but unsuitable as to quality, and therefore issued bonds with the sanction of the

---

On effect of limitation of municipal indebtedness on acquisition of water supply system, see note in 59 **L. R. A.** 604.

On the question of right of taxpayer in absence of statute to enjoin unlawful expenditures by municipal corporation, see notes in 36 **L. R. A.** (n. s.) 1; **L. R. A. 1916A**, 908.

As to power of municipal corporation to engage in enterprise generally regarded as of a private character, see notes in 31 **L. R. A.** (n. s.) 117; 51 **L. R. A.** (n. s.) 1143; **L. R. A. 1915B**, 859.

electors, and sold the same for the purpose of procuring funds to install a filtration plant. The constitutional three per cent limit of indebtedness had theretofore been reached. *Held,* in a suit by a taxpayer for an injunction, that the contemplated expenditure was properly justifiable as one "to procure a water supply," within the meaning of section 6, Article XIII, of the Constitution, permitting indebtedness for such . purpose in addition to the three per cent limit.

Same—Constitution—Nature of Instrument.
4. The state Constitution is not a grant of, but a limitation upon, powers which may be exercised, among others, by the legislative branch of the state government.

Same—Powers—Constitution.
5. A city is a creature of statute, and, in the absence of constitutional limitations, the legislature may prescribe for it such powers and privileges as it deems best.

Same—Procuring Water Supply—Additional Indebtedness—Constitution.
6. The only limitation placed by section 6, Article XIII, of the Constitution, upon the amount of indebtedness which a city may incur, in addition to the three per cent limit, for the purpose of procuring a water supply, is that it must have the approval of the taxpayers affected thereby.

Same—Water Supply—Indebtedness—Statutes.
7. Under section 3259, Revised Codes, the authority of a city to incur indebtedness beyond the constitutional three per cent limit for the purpose of rendering or maintaining its water supply wholesome and fit for human consumption is implied, if not expressly conferred.

Constitution—Legislative Construction—Effect.
8. Though courts are not bound by legislative construction of the Constitution; yet, if long acquiesced in, such construction is entitled to most respectful consideration.

Cities and Towns—Water Plants—Revenues—Surplus Funds—May be Disposed of, How.
9. Where, after making ample provision for retiring bonds issued to procure a water system, a city had accumulated a surplus over and above the amount necessary to discharge the interest on the indebtedness as it became due, it could properly expend such surplus in part payment of a necessary filtration plant, without the sanction of a taxpayers' vote, transfer it to its general fund, place it in a . special fund, or devote it to any legitimate municipal purpose, without running counter to the provision of section 6, Article XIII, above, that the revenues obtained from the water system shall be devoted to the payment of the debt.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

Action by Joseph McClintock against the City of Great Falls and others. Judgment for defendants, and plaintiff appeals. Affirmed.

*Mr. F. A. Ewald,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Cooper, Stephenson & Hoover,* for Respondents, submitted a brief; *Mr. Ransom Cooper* and *Mr. W. H. Hoover* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1898 the city of Great Falls issued its bonds in the sum of $376,000, and from the proceeds procured a water system for supplying the city and its inhabitants. In 1915 the city council, reciting that the city's only available means of water supply —the Missouri River—had become polluted to such extent that the water was no longer fit for use and was dangerous to health, that it was necessary to provide a filtration plant for purifying the water, and that such plant could be installed for $150,000, submitted to the qualified electors the question whether the indebtedness of the municipality should be increased further beyond the constitutional limit of three per cent by an issue of bonds in the sum named to procure funds necessary for the purpose indicated. Pursuant to the authority conferred by a favorable vote, the city caused the bonds to be issued and sold and the proceeds deposited in the city treasury. It then entered into three contracts for the installation of a filtration plant at a cost exceeding $187,000, and plaintiff, a taxpayer of the city, commenced this action to enjoin the payment of the contract price or the expenditure of any money in the further execution of the plan. The trial court after a hearing denied plaintiff any relief, and he appealed from the judgment entered in favor of the defendants.

1. There is not any merit in the contention that plaintiff has [1] not sufficient interest to authorize him to prosecute this action. The full faith and credit of the city are pledged to the redemption of the bonds issued (*Carlson* v. *City of Helena,* 39 Mont. 82, 17 Ann. Cas. 1233, 102 Pac. 39), and the interest

of the taxpayer is sufficient to give him standing in court if the city is threatening to make unlawful use of its public funds. (*Milligan* v. *Miles City*, 51 Mont. 374, L. R. A. 1916C, 395, 153 Pac. 276.)

2. Whether the city in entering upon the contracts for the [2] filtration plant incurred an indebtedness depends upon the state of its finances. If the city has on hand funds available for the purpose in amount sufficient to discharge its obligations under the contracts as they mature, then no indebtedness whatever was contracted. It is a cash transaction. (*Field* v. *Stroube*, 103 Ky. 114, 44 S. W. 363.)

3. Upon the trial it was made to appear that from the revenues derived from its water plant the city has paid the interest on its bonded indebtedness, the running expenses of the plant, including the cost of repairs, extensions, and betterments; has paid into its sinking fund for the redemption of its outstanding bonds $113,000, and has accumulated a surplus of $50,000. It appeared also that the revenues from the water plant will provide ample funds for interest, maintenance, and the discharge of its water bonds as they mature, including the present issue of $150,000, and that it is the purpose of the city to expend for the filtration plant the surplus fund of $50,000 in addition to the $150,000 received from the sale of bonds.

Though the evidence is not very clear, we shall assume that [3] the city has reached the three per cent limit of indebtedness, and that the entire expense incident to the completion of the filtration plant ready for successful operation will not exceed $200,000. It is the contention of appellant that the city has no funds whatever available to meet and discharge its obligations arising from the contracts; in other words, that the city cannot lawfully expend, for the purpose intended, either the $150,000 derived from the sale of bonds or the $50,000 surplus. Whether this contention should or should not be upheld depends upon the proper construction of the language of section 6, Article XIII, of the Constitution. That section declares that a city shall not incur any indebtedness for any purpose to an amount,

including outstanding indebtedness, in the aggregate exceeding three per cent of the value of the taxable property therein, except to construct a sewerage system or to procure a supply of water. Since the purpose to which the city desires to devote this money is not related in any manner to the construction of a sewerage system, the question presented is narrowed to the inquiry: May the expenditure of these funds be justified as one "to procure a supply of water?"

It is impressed upon our attention that the city has already a water supply sufficient in quantity to meet its requirements, and it is the contention of appellant that an expenditure for the purification of the water cannot be justified as one to procure a supply of water. Appellant's premise must be conceded, *viz.*, that, unless the installation of a filtration plant can be justified as within the meaning of the language of section 6 above, it cannot be justified in this instance at all. To arrive at the meaning of any provision of our Constitution, two considerations must be kept in mind: the character of the Constitution itself, and the particular subject matter under review. Speaking [4] generally, our Constitution is not a grant of powers, but a limitation upon the powers which may be exercised by the various branches of the state government. (*State ex rel. Hillis* v. *Sullivan*, 48 Mont. 320, 137 Pac. 392.) Except in so far as it is restricted by the Constitution, the legislature has all the law-making power possessed by any sovereign state. (*State* v. *Dodd*, 51 Mont. 100, 149 Pac. 481.)

A city of this state is a creature of statute. Independently [5] of legislation it cannot exist—cannot exercise any functions whatever. In the absence of constitutional limitations, the legislature would be free to prescribe for a city such powers and privileges as it deemed best. Since a city can act only by virtue of legislation, section 6, Article XIII, in its entirety is addressed to the legislature, and marks certain limits beyond which a municipality may not be authorized to go, in the matter of incurring public indebtedness. The subject matter of the section is municipal, township and school district indebtedness.

We are concerned with the subject to the extent only that it applies to municipalities—cities and towns.    To what extent does the section seek to limit legislative authority over municipal indebtedness?    It fixes by hard-and-fast rule three per cent of the value of the taxable property as the maximum indebtedness which a city may be authorized to incur for all purposes, except that additional indebtedness may be permitted under the sanction of a favorable vote by the taxpayers affected, when it is necessary to construct a sewerage system or to procure a [6] supply of water.    There is no limit fixed to the amount of such additional indebtedness, and no restriction imposed upon the legislature with reference to it, except that it must have the approval of the taxpayers affected thereby.

The first legislation upon this subject after the adoption of the Constitution was enacted in 1893 (Laws 1893, p. 113).    By that Act a city was authorized to incur an indebtedness in excess of the three per cent limit upon a favorable vote of the taxpayers to construct a sewerage system or to procure a supply of water.    The same Act conferred upon the city which owned its water system jurisdiction over the stream or other source of supply.    That Act was amended in 1897 (Laws 1897, p. 203), so as to confer upon such city jurisdiction over the stream or other source of supply for the purpose of enforcing sanitary regulations and preserving the purity of the water.    As thus amended, the legislation was carried into the compilation of 1907 as section 3259, and is the law upon the subject to-day. [7]    Under section 3259 the authority of a city to incur indebtedness beyond the three per cent limit for the purpose of rendering or maintaining its water supply wholesome and fit for the purpose intended is clearly implied, if not expressly conferred.

This court is not bound by a legislative construction of the [8]    Constitution, but such a construction, long acquiesced in, is entitled to most respectful consideration (*Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386) ; and in this instance the construction given to the language of section 6, Article XIII,

by the legislature coincides with our own view. Can it be said that a city which has a water supply sufficient in quantity cannot incur the additional indebtedness in order to render such supply suitable in quality? Assume that the water system acquired by the city of Great Falls in 1898 was adequate in quantity and quality, but that subsequently the water has become impaired in quality to such an extent that it is now unfit for human consumption, and that the maximum amount of revenue which the city may raise by general taxation is altogether insufficient to provide any practical means of purification; what, if any, avenue for relief is open to the city? It cannot meet the extraordinary expense from its ordinary revenues, for they are insufficient. It cannot incur an indebtedness for the purpose within the three per cent limit, for that limit has been reached already; and, according to appellant, it cannot incur an indebtedness for the purpose beyond the three per cent limit, for the Constitution forbids it. If appellant's theory be accepted, the city is helpless, for there are no other lawful means by which the necessary funds may be procured, and, since there is not any other available source of water supply for the city, the inhabitants have no other alternative but to abandon their homes and property and thereby destroy the security for the entire bonded indebtedness. We are unwilling to concede that the framers of our Constitution in drafting section 6, Article XIII, intended that their language should receive a construction which leads to such a result, unless that construction is commanded, and, if commanded, it evidences a short-sighted policy altogether out of harmony with the general purpose of the Constitution as a whole.

Considering the history of the times when the Constitution was written—the fact that cities of the territory were increasing in population more rapidly than in wealth, that they were even then confronted with the problem of securing funds necessary to supply their inhabitants with water, and that for all ordinary purposes the limit of indebtedness was set at three per cent of the value of the taxable property—and we think the conclusion

inevitable that by the use of the term "a supply of water" was meant a supply sufficient in quantity and suitable in quality to meet the demands of the city and its inhabitants. Under this construction any addition to the existing plant necessary to render it adequate for the purpose intended is fairly within the contemplation of section 6, Article XIII, above.

It is contended further that the injunction of the concluding [9] clause of section 6, Article XIII, renders unavailable 'the surplus fund of $50,000. The section provides that the normal limit of indebtedness—three per cent—may be exceeded to enable a city "to procure a supply of water for such municipality which shall own and control said water supply and devote the revenues derived therefrom to the payment of the debt." The contention of counsel is that, since this surplus fund is a part of the revenues derived from the water system, it must be devoted to the payment of the $376,000 debt, and can be used for no other purpose. Again, we think counsel places a too narrow construction upon the language of the constitutional provision. To illustrate: Let us assume that the city now has in its sinking fund a sum sufficient to discharge the entire indebtedness of $376,000, the last installment of which does not fall due until 1933; must it continue to set apart the revenues derived from its water plant for that same purpose until the bonds all mature? Does the language quoted above mean that the city must devote *all* of the revenues derived from its water system to the payment of the debt, or does it mean that such revenues must be dedicated to the discharge of the bonded indebtedness so far as necessary for that purpose? To state the question is to answer it.

While this record does not disclose that the city actually has in its treasury funds sufficient to pay the entire indebtedness of $376,000, it does convince us that ample provision has been made to retire those bonds as they mature, and that the expenditure of this $50,000 for the installation of the filtration plant will not impair the city's credit nor lessen the bondholders' security. Under these circumstances any excess of revenues

derived from the water system over the amount necessary to discharge the interest on the indebtedness as it becomes due and meet the requirements of the sinking fund is not charged with a trust, but may be transferred to the general fund of the city or placed in a special fund and devoted to any legitimate municipal purpose. The expenditure of this fund of $50,000 does not require the sanction of a taxpayers' vote.

It is alleged in the complaint that the taxpayers of Great Falls were induced to give their assent to the issue of bonds in the sum of $150,000 by the representation of the city council that the entire filtration plant would not cost more than that sum; but the allegation was put in issue by the answer, and there was not any evidence introduced upon the subject.

The further contentions made by appellant do not call for special consideration. We find no error in the record.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.