**PUGHE v. LYLE et al.**

No. 3832–S.

District Court, N. D. California, S. D.
March 19, 1935.

Francis V. Keesling, of San Francisco, Cal., Richard S. Kaplan, of Gary, Ind., and Garton D. Keyston, of San Francisco, Cal., for plaintiff.

Maurice J. Rankin, of San Jose, Cal., and Thomas J. Riordan, of San Francisco, Cal., for defendants.

LINDLEY, District Judge.

Plaintiff is a citizen and resident of the state of Minnesota, and brings this suit against defendant Lyle, who is sheriff of the county of Santa Clara, Cal., and defendant Thomas, who is district attorney of said county. The defendants are each citizens and residents of the state of California. The amount in controversy exceeds $3,000, exclusive of interests and costs.

Plaintiff is engaged in what in common parlance is known as showmanship, and promotes and conducts contests in various communities, in which young men and women engage in what are known as "Walkashows." Apparently these are successors to similar affairs known as Marathon dances. In a contest of this character, the participants, in pairs, walk continuously from the inception of the contest until eliminated or until the end, when the winners are selected. Certain rest periods and time out for hygenic, sleeping, and food purposes are allowed to all contestants. Ordinarily, the contest runs about five weeks. It was stated in court, without dispute, that the shortest one on record lasted somewhat longer than four weeks, and the longest a little over six weeks. Cash prizes are awarded to the winners. During the progress of the contest, the participants are from time to time invited to provide acts in dancing or gymnastics, attractive to the audience.

The character of the exhibition is a matter hotly disputed. Plaintiff produces the evidence of reputable citizens to the effect that the contest conducted at Fresno by plaintiff was an orderly demonstration, and in no way destructive or subversive of the morals of the participants or of the spectators. Defendants, on the other hand, have submitted affidavits citing specific examples of occurrences which they describe as inimical to a desirable morale on the part of both participants and observants.

Ruth Comfort Mitchell swore in her affidavit that on February 13, 1935, and again on February 14, 1935, for several hours she viewed a contest of this sort in the city of Fresno. The couples had then been walking since December 26, 1934. They appeared to her to be in a state of pitiful weariness, sleepiness, and exhaustion. They were chained together by the wrists. Be-

cause of the condition of her feet, one girl was unable to wear shoes. She ran around during the evening "grind" or "treadmill" with tears streaming down her face. She finally fell and was eliminated. The floor judge from time to time directed the contestants to execute various kinds of steps at certain tempos. He blew his whistle and said, "Boys, carry the girls." Thereupon the boys would support the girls, who then went to sleep on their feet. At other times the girls held the boys, who immediately went to sleep on their feet and were steered and dragged about the floor by their girl partners. One girl fainted twice in 21 minutes, and thereby became eliminated. When she first fainted, she was unchained from her partner and carried to the emergency hospital, unconscious. The announcer reported to the audience that it was impossible to revive her. She finally returned, looking very ill and exhausted, and was again chained to her partner, remaining so until the second fainting spell, when she was eliminated. The eyes of one boy were closed and he was unable to feed himself. The witness believed the exhibition to be cruel to the contestants, degrading to the spectators, and demoralizing in its influence.

Other witnesses testified that the crowd attending was largely disorderly, of low class, using loud and profane language, and that there was much cursing at all hours of day and night. Specific instances of revolting occurrences are recited; high school and grade school boys and girls attended and observed these events.

On March 4, 1934, the supervisors of Santa Clara county adopted an ordinance, which appears in the footnote.[1]

Plaintiff had previously leased premises and made arrangements to put on a "walka-show" in the city of San Jose, in said county, beginning March 19, 1935. He had procured a license from the tax collector and made expenditures, aggregating substantial sums of money, and preparations for the contest. Promptly upon the enactment of the ordinance, he filed his bill of complaint, wherein he prayed that defendants might be enjoined from enforcing said ordinance, on

---

[1] "Ordinance No. 103.

"An Ordinance Prohibiting Public Exhibitions, Shows or Entertainments Between Certain Hours, and Providing a Penalty for the Violation Thereof.

"The Board of Supervisors of the County of Santa Clara do ordain as follows:

"Section 1. It is hereby declared unlawful for any person, firm or corporation to conduct, operate or carry on in the County of Santa Clara any exhibition, show or entertainment to which the public is invited or admitted between the hours of 1 o'clock a. m. and 8 o'clock a. m. of any day, or to keep open during such period any building or premises for the conduct, operation or carrying on of public exhibitions, shows, or entertainment;

"Section 2. Any person, firm, or corporation violating any of the provisions of this ordinance shall be guilty of a misdemeanor, and upon conviction thereof shall be punishable by a fine not to exceed five hundred dollars ($500.00), or by imprisonment in the county jail for a period not exceeding six months or both such fine and imprisonment.

"Section 3. Whereas certain persons, firms or corporations propose and threaten to immediately construct and fit certain premises in this county for the purpose of conducting such public exhibitions, shows or entertainment for a continuous period so as to constitute an endurance contest or contests, and which proposed exhibitions, shows or entertainment are revolting, cruel and immoral and subversive to the morals of the citizens of this county and will attract large numbers of undesirable persons to this county and will cause public disturbances and be an immoral influence in this county, particularly affecting the younger generation, and will be a menace to and destructive of the public peace, health and safety of this county; and, whereas, such proposal and threats will be carried into effect before an ordinance prohibiting the same can become effective in the ordinary period, we therefore declare and ordain an emergency to exist and ordain that this ordinance shall take effect immediately.

"Passed and adopted at a meeting of the Board of Supervisors of the County of Santa Clara, this 4th day of March, 1935.

"Ayes: Supervisors Cooley, McKinnon, McClay, Hecker.

"Noes: Supervisors, None.

"Absent: Supervisor Ayer.

"H. Hecker,
"Chairman of the Board of Supervisors of the County of Santa Clara, State of California.

"(Attest)      Henry A. Pfister,
"County Clerk and ex-officio Clerk of the Board of Supervisors of the County of Santa Clara.
"By Eugene M. Don,
"Deputy Clerk."

the ground that it is discriminatory, unreasonable, and in violation of his constitutional rights.

There was in effect at that time an ordinance enacted May 1, 1933, forbidding endurance contests. Because of its language, its validity is doubtful.

■ The court has jurisdiction of this cause, because of the diversity of citizenship and the amount in controversy, and the plaintiff is, under the general principles of equity, within his rights in invoking the aid of this court. Where public officers act in breach of trust or without authority, or threaten so to do, and such acts will result in irreparable injury, or will make necessary a multiplicity of suits at law to obtain adequate redress, they may be enjoined. See 32 Cor. Jur. 240, 88, 247, 261, 264; and cases there cited.

■ The question directly in issue here is the validity of the ordinance enacted March 4, 1935, and the solution of that question depends upon whether, or not this ordinance is a reasonable exercise of the police power of the state. In California, the Constitution grants to counties power to make and enforce, within their limits, "all such local, police, sanitary, and other regulations as are not in conflict with general laws." Const. Cal. art. 11, § 11. This constitutes full power and authority upon the part of the county authorities to exercise all the police power that the state might exercise, in the absence of specific legislation to the contrary.

■ The police power may be applied whenever and wherever necessary for the protection of the morals, health, or safety of the people. See 7 Cal. Jur. 534. Those matters which are subject to police regulation, McQuillan defines in his work on Municipal Corporations, vol. 3, p. 435, as follows: "Those which are dangerous, or of such a character that they may be so conducted as to affect the health, safety, morals and general welfare of the community may be regulated and the extent and reasonableness of the regulations must be determined by the inherent nature of the trade or occupation. Although the trade or occupation may be innocent and innocuous, and may be said to be pursued as of right, as distinguished from a mere privilege, the police power as regarded and enforced by the sounder judicial opinions is sufficiently broad to justify reasonable regulation when deemed necessary or desirable for the public good."

In Mehlos v. City of Milwaukee, 156 Wis. 591, 146 N. W. 882, at page 885, 51 L. R. A. (N. S.) 1009, Ann. Cas. 1915C, 1102, the court said: "Public meetings and meeting places which are liable to be characterized by disorderly conditions or lead to breaches of the peace or promote immorality have, universally, been considered proper subjects for police regulation. Public dances and dance halls fall within the latter class. While, if conducted in a proper manner such a hall and its use may afford opportunity for innocent amusement, in the absence of any regulation, it tends to breed disorder, indolence, intemperance, immorality and to otherwise lower the standard of people in the social state. Such places, conducted for gain, open, in general, to all who come in suitable order to be received, no other condition being exacted except the prescribed entertainment fee, are so liable to be centers of disturbance and character lowering or destruction, that they have been subjected to pretty severe regulation by statute and city ordinances, to preserve the possible benefits of such amusement places, and prevent the possible or probable abuses."

To the same effect are Ex parte Koser, 60 Cal. 177; likewise, Ex parte Moynier, 65 Cal. 33, 2 P. 728; In re Weisberg, 215 Cal. 624, 12 P.(2d) 446, and In re Sumida, 177 Cal. 388, 170 P. 823.

■ Consequently, the right to regulate hours of closing such business as public dance halls and similar public exhibitions at reasonable hours has long been recognized and is universally supported. 55 A. L. R. 242; 43 Cor. Jur. 363; In re Sumida, 177 Cal. 388, 170 P. 823.

■■ The judicial department is not concerned with the wisdom, or lack of wisdom, of legislation. Such questions are for the legislative department, the members of which have been selected by the people, for the purpose of enacting legislation. With that function, the judiciary is not concerned, except where the legislature has acted in such an unreasonable, capricious, or arbitrary manner as to violate some provision of the basic law—the Constitution. Whether, therefore, it was wise for the supervisors of Santa Clara county to forbid public exhibitions between the hours of 1 o'clock a. m. and 8 o'clock a. m. is wholly beside the question. The only pertinent inquiry, so far as the court is concerned, is whether this restriction upon public entertainments of all character is reasonable. Little encouragement is found in the writings of distinguished jurists and legal authorities to support the proposition that a city council

or other legislative body may not regulate the hours of all public exhibitions, so as to eliminate therefrom all exhibitions within the early hours of the morning. This ordinance is general in character; its terms are not directed against any specific kind of public exhibition. This court believes, therefore, that it is entirely within the province of the legislative body to determine that the hours of from 1 o'clock a. m. to 8 o'clock a. m. are hours at which the public should not be invited or admitted to exhibitions of any character for profit.

■ It is said that the third section of the ordinance discloses that the legislation was directed toward this plaintiff, and that, therefore, the ordinance is discriminatory. This section mentions no specific individual, but, if we accept plaintiff's interpretation in that respect, then, under the evidence submitted, the question is presented as to whether the plaintiff's business is such a business as the supervisors might regulate by preventing its conduct between the hours specified.

The evidence submitted plainly justifies the exercise of discretion by the legislative body. Evidently the physical results upon the contestants, the effect of observation of such physical facts upon the minds of the morbidly curious who may be present between 1 o'clock a. m. and 8 o'clock a. m. at the exhibition, the repulsive incidents recited in the affidavits, the presence of school children, the effect upon their health and studies, the cursing, the necessity of police protection at all hours of the night, and the many other facts presented to the court were clearly sufficient to justify legislative action. It is not necessary to review further the facts justifying legislative action, for it is evident that the legislative body had reasonable ground for the exercise of such discretion.

■ It is said, further, that section 3 of the ordinance, which recites the existence of an emergency, and, therefore, because thereof, makes the ordinance effective at once and prior to publication for thirty days as is ordinarily required, was not justified in fact.

Ordinarily, the court will assume that an emergency existed where the legislative action has recited that fact. Morgan v. City of Long Beach, 57 Cal. App. 134, 207 P. 53; Los Angeles Dredging Company v. Long Beach, 210 Cal. 348, 291 P. 839, 71 A. L. R. 161.

■ Irrespective of this question, and wholly aside from any question of emergency, under the California law, the ordinance will become valid at the end of the 30-day period, namely, April 4th. Consequently, the enactment of the emergency section is destructive and violative of none of plaintiff's rights. He knew, whether an emergency existed or not, that on or after April 4th the ordinance would be effective, and that he could not conduct the dance or "walkashow" for the customary period necessary to make it a success. He was bound by that knowledge; whether he could begin his operations on March 19th was wholly immaterial.

The court makes no finding of ultimate fact at this time as to whether the exhibition promoted by the plaintiff is one subversive to morals and health. That subject-matter is considered only in determining whether there is anything in this record to justify a finding that the legislative body was without power to act. It is not necessary to determine such ultimate question of the character of plaintiff's exhibition. Were it necessary so to do, the court would require full and complete hearing where oral evidence could be submitted and witnesses observed.

It follows, therefore, that the application for temporary injunction will be denied.

The court adopts the foregoing as its findings of fact and conclusions of law, and directs that the same be incorporated in the decree herein, by way of reference. Proper decree may be submitted.