HAMES, Respondent, v. CITY OF POLSON, et al., Appellants.

No. 8922.

Submitted December 15, 1949. Decided March 3, 1950.

215 Pac. (2d) 950.

Mr. T. H. MacDonald, Kalispell, and Mr. Lloyd I. Wallace, Polson, for appellants. Mr. MacDonald and Mr. Wallace argued the cause orally.

Mr. F. N. Hamman, Polson, for respondent. Mr. Hamman argued the cause orally.

MR. JUSTICE BOTTOMLY:

This is an appeal from a decree and order granting a permanent injunction, enjoining the operation of bars and slot machines and gambling upon or within the confines of the described municipal public park owned by the city of Polson in Lake county, Montana.

Prior to 1936 the Polson Country Club, then an unincorporated association, owned a tract of land, about one-half mile northeast of the Polson city limits, on which golf was played.

To qualify for federal grants of W. P. A. funds, available to municipal corporations and other public agencies but not obtainable by private persons, the Polson Country Club, on July 7, 1936, conveyed the aforesaid property to the city of Polson for development and use as a municipal park, recreational grounds, and golf course purposes, by deed as follows:

"This indenture, made the 7th day of July, in the year of our Lord, one thousand nine hundred and thirty-six, between the

Polson Country Club, a corporation, organized and existing under and by virtue of the laws of the State of Montana, with its principal place of business and Post Office address at Polson, Montana, party of the first part, and the City of Polson, in Lake County, a municipal corporation of the State of Montana, party of the second part.

"Witnesseth. That the said party of the first part, for and in consideration of the sum of One and no/100 Dollars ($1.00) and other good and valuable consideration, lawful money of the United States of America to it in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, do remise, release and forever quitclaim unto the said party of the second part, and to its successors and assigns, the following described real estate, situated in the County of Lake, and State of Montana, to-wit:

"Lot Four (4) and the Northwest Quarter of the Southwest Quarter (NW¼SW¼) of Section Two (2) in Township Twenty-two (22) North of Range Twenty (20) West, according to the United States government survey thereof, save and excepting from, however, all easements for rights of way heretofore granted to the Northern Pacific Railway Company for railroad purposes, and likewise all easements for rights of way heretofore granted for and on behalf of the public highway purposes and any right of way heretofore granted or now existing for pole lines or ditches and likewise this conveyance shall be subject to flowage rights now or hereafter constructed, excepting therefrom, that portion of said tract of land which lies south of the U. S. Highway No. 93, containing approximately four (4) acres, more or less.

"Together with all the tenements, hereditaments and appurtenances thereunto belonging, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity for the said party of the first part, of, in or to the said premises, and every part and parcel thereof.

"To have and to hold, all and singular, the said premises, with the appurtenances unto the said party of the second part, its successors and assigns forever, for municipal park, recreational grounds and golf course purposes.

"This grant is made and accepted upon condition that said tract of land shall be used for park, recreational grounds and golf course purposes, and upon condition that, in the event the same ceases to be used, maintained and kept up for such purposes then the title to said land and premises together with the appurtenances and improvements thereon, shall revert to the grantor herein named and that the grantee will reconvey such title to said grantor, and upon further condition that the grantee herein will by ordinance or resolution create and provide a park Board or Commission, consisting of three members to be appointed by the Mayor of the City of Polson, one of whom shall be a member of the City Council of the City of Polson, and the other two shall be members in good standing of the Polson Country Club, and that said park Board or Commission shall be vested with power and authority to govern and manage said park, recreational grounds and golf course and to make reasonable rules and regulations for the use thereof by the public."

The city accepted the deed and by ordinance assumed to create a city park board and to prescribe its duties.

Through grants of public funds obtained by the city through the federal W. P. A., augmented by contributions received from the people of the city of Polson and different interested groups and organizations, a large building was erected on the tract.

Assuming to act under the authority of section 72 of a city ordinance, Article XIV, on March 10, 1948, such park board so created by said ordinance, entered into a lease agreement with the Polson Country Club then and now a private corporation, whereby the said park board leased to the Polson Country Club the lower portion of the large building and the playing area of the golf course, all located on the property described in the above deed, for a term of five years from April 20, 1948. As rent the club is to pay to the city of Polson all green fees and membership

fees collected by the club. The park board on behalf of the city of Polson agreed to keep up and maintain the leased property and pay for all water, lights and heat and it was agreed the Polson Country Club could not sublease the property or any part thereof without consent of the park board.

Similar arrangements without any lease have been in operation between the city of Polson and the Polson Country Club since the completion of the building in 1937 or 1938 prior to the said lease and apparently no objections were encountered until about two years ago when the Polson Country Club, after the execution of the lease, installed a bar and began selling beer and liquor and operating slot machines in what is called the bar or club room on the leased lower floor of the large building, from which portion of the building and premises the general public was and is excluded. The kitchen and rooms occupied as living quarters by the manager and his family are also located on this first floor. The manager also serves the members of the Polson Country Club with beer or liquors as required.

The plaintiff in his complaint alleges that at all times material to this action he is and has been a taxpayer in the city of Polson, Montana, and as such brings this action on his own behalf and on behalf of other taxpayers similarly situated; that the property is held in trust by the city of Polson for a specific purpose, under the terms and conditions imposed in the deed to the city, being for municipal park, recreational, and golf course purposes, and to the use and benefit of the general public for those purposes only; that a bar and slot machines operated at, in and upon these premises interferes with the general public's use of the property and that the action of the defendants has been in total disregard of their duties and obligations to and toward the citizens of Polson and this plaintiff.

This taxpayer's action is brought to protect the interests and rights of the inhabitants of Polson in and to the property deeded to the city of Polson and the complaint on its face clearly states a cause of action, showing plaintiff to be entitled *prima facie* to an injunction. See McClintock v. City of Great Falls,

53 Mont. 221, 163 Pac. 99; Lloyd v. City of Great Falls, 107 Mont. 442, 86 Pac. (2d) 395; Colwell v. City of Great Falls, 117 Mont. 126, 138, 157 Pac. (2d) 1013; Milligan v. City of Miles City, 51 Mont. 374, 382, 153 Pac. 276, L. R. A. 1916C, 395, and cases therein cited.

The deed is absolute in its terms and conveyed the fee simple title to the property therein described to the city where it has since remained.

A city or town is but an assemblage of inhabitants living in the vicinity of each other and not separated by any other intervening division of the state and having a designated number of inhabitants, and when organized as a municipal corporation such step is taken for the purpose, mainly, that the people within its territorial limits may thereby be enabled, for their own interest and advantage, to administer their local and internal concerns. The property covered by the above described deed, while running to the city, is in fact a trust, the city council being the trustees holding the legal title, and the equitable title being in the *cestui que trust,* being the inhabitants, the public, of the city of Polson.

"A fundamental essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment * * *" 26 R. C. L., "Trusts," sec. 22, p. 1186; Doan v. Vestry of Parish of Ascension, 103 Md. 662, 64 A. 314 and note 7 L. R. A., N. S., 1119, 115 Am. St. Rep. 379; Hospes v. Northwestern Mfg. & Car Co., 48 Minn. 174, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637.

This beneficial enjoyment, or, in other words, the equitable title to the subject matter of the trust, is vested in the person or persons for whose benefit the trust is created, known as the *cestui que trust.* See Dillenbeck v. Pinnell, 121 Iowa, 201, 96 N. W. 860.

For whose benefit was this trust now under consideration created? Surely not for the Country Club. The property is but the subject matter of the trust, legal title to which is vested in the trustees, in this case the city council, for the use and benefit

of all the inhabitants of the city of Polson generally, they being the ones entitled to the beneficial enjoyment of the property thus created and dedicated for a particular purpose. See Town of Cascade v. Cascade County, 75 Mont. 304, 243 Pac. 806.

A different construction is placed upon dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted. See Spires v. City of Los Angeles, 150 Cal. 64, 87 Pac. 1026, 11 Ann. Cas. 465; Village of Riverside v. MacLain, 210 Ill. 308, 71 N. E. 408, 66 L. R. A. 288, 102 Am. St. Rep. 164.

The property herein was deeded to the city under restrictions as to its use, with a reversion clause. The property, in the very nature of it, was to be enjoyed by the public at large and neither the city nor its officers may allow its use to be diverted to uses other than those specified and prescribed in the grant.

Passing for the moment the other questions attempted to be raised herein, and confining ourselves to a consideration of the terms of the deed granting the property to the city, it is clearly apparent that the uses for which this property may be leased are limited by the terms of the grant and dedication. In other words, the city or a park board, if one was created, cannot lease or use, or allow its tenants to use, the property for purposes not authorized by the terms of the grant, such use would be in violation of the trust imposed. See Stone v. City of Los Angeles, 114 Cal. App. 192, 299 Pac. 838.

In Sharp v. City of Guthrie, Okl. Supp., 145 Pac. 764, 766, the court said: "Defining the interest of the complaining taxpayer in the parks to be that of cestui que trust and that the suit, in effect, was to preserve and enforce a trust, the court [in Davenport v. Buffington et al., 8 Cir., 97 F. 234, 38 C. C. A. 453, 46 L. R. A. 377] said:

" 'Now, the enforcement of trusts is one of the great heads of equity jurisdiction. The land in these parks, if it was really dedicated to the use of the public for park purposes, is held in trust for that use, and courts of equity always interfere at the

suit of a cestui que trust or a cestui que use to prohibit a viola-
tion of the trust, or a destruction of the right of user. The ap-
pellee Tarrant is one of the cestuis que use for whom these parks
are held in trust, and the inevitable conclusion is that his interest
in them is ample to enable him to maintain a suit in equity to
prevent their diversion to private uses.'

"It would serve no useful purpose to cite any considerable
number of authorities in support of a doctrine so well estab-
lished." See Perry Public Library Ass'n v. Lobsitz, 35 Okla.
576, 130 Pac. 919, 45 L. R. A., N. S., 368; Warren v. Mayor of
Lyons City, 22 Iowa 351; Cary Library v. Bliss, 151 Mass. 364,
25 N. E. 92, 7 L. R. A. 765; Church v. City of Portland, 18 Or.
73, 22 Pac. 528, 6 L. R. A. 259.

The court sitting in equity is authorized, if not required, to
determine all disputes incidental to the controversy. See
Shell Oil Co. v. Dye, 7 Cir., 135 F. (2d) 365; Rosehill Cemetery
Co. v. City of Chicago, 352 Ill. 11, 185 N. E. 170, 87 A. L. R. 742.

It is a general rule, set forth by statutes in most states, that
where property is consecrated to public use, by dedication
of the owner the municipality within whose borders the premises
are situate takes it as trustee for the public and for the special
uses designated by the dedicator.

Section 11-1004, R. C. M. 1947, provides in part: "Any city
or town organized under the laws of the state of Montana is
hereby empowered and given the right to accept, receive, take,
hold, own, and possess any gift, donation, grant, devise, or be-
quest, or any property, real, personal, or mixed, or any improved
or unimproved park or playground, * * * and the right to own,
hold, work, and improve the same; and said gifts, donations,
grants, bequests, or devises made to any officer or board of any'
such city or town shall be considered a gift, donation, grant, be-
quest, or devise made for the use and benefit of any such city
or town, and *shall be administered and used, by such city or
town for the particular purpose for which the same was given,
donated, granted, bequeathed, or devised.*" (Emphasis sup-
plied.)

478

R. C. M. 1947, sec. 11-1005, as far as pertinent here, provides: "Any donation, gift, or grant may be made by any person, company, copartnership, or corporation to any city or town * * * of any property, real, personal, or mixed, or any improved or unimproved park or playground * * * but in the event that any gift, donation, grant, devise, or bequest shall be made to any such city or town, or to any officer or board of such city or town, the same shall be construed as a gift, donation, grant, devise, or bequest to such city or town, and *shall be administered and used for such city or town,* and for the *particular purpose* for which the same was given, donated, granted, bequeathed, or devised." (Emphasis supplied.)

Hence, as the empowering statute impressed this property with ▮▮▮ a trust, by accepting the deed the city of Polson, through its council as trustees, may not be heard to repudiate the trust or be permitted to allow the trust property to be used for a different purpose than that for which it was dedicated.

"* * * we think it cannot now be doubted that a city owns and its officials administer its streets and parks; not as private proprietors, but as trustees for the people. While streets and parks are to be administered primarily for the use of the people for travel and recreation it is equally certain that, consistent with such uses, the public places of a city must be open for the use of the people in order that they may exercise their rights of free speech and assembly." Hague v. Committee for Industrial Organization, 3 Cir., 101 F. (2d) 774, 785, Id., 307 U. S. 496, 59 S. Ct. 954, 83 L. Ed. 1423.

"Here the uses for which the premises in controversy were dedicated were for the purposes of a public park and common, and for the recreation and amusement of the public. These uses were not only declared by the dedicator, but they were assented to by the village * * *. It results that the village cannot employ these premises, or any portion of them, for any additional purpose, * * *." Village of Riverside v. MacLain, supra [210 Ill. 308, 71 N. E. 415].

Equity looks at the whole situation and grants or withholds

relief as good conscience dictates. 30 C. J. S., Equity, sec. 89, p. 456; Sun Life Assur. Co. of Canada v. Allen, 270 Mich. 272, 259 N. W. 281.

When a court of equity has obtained jurisdiction for any purpose, it is empowered to determine all questions involved in the case and do complete justice. See Rosehill Cemetery Co. v. City of Chicago, supra.

That public bodies and public officers may be restrained by ▮ injunction from proceeding in violation of law, to the prejudice of the public, or to the injury of individual rights, cannot be questioned. A usurpation of powers may by this process be prevented, in a proper case, and a waste, misapplication, or diversion of public property or trust property or funds be enjoined. See People of New York v. Canal Board of New York, 55 N. Y. 390, 393. See note in 2 Am. St. Rep. at page 92; 43 C. J. S., Injunctions, sec. 108, p. 614, sec. 110, p. 631, sec. 111, p. 633, and sec. 119, p. 650; and cases cited; Pughe v. Lyle, D. C., 10 F. Supp. 245, 248.

Our legislature has granted further power and authority to city and town councils to deal with park property by amending section 5039.61, by Chapter 35, Laws of 1937, R. C. M. 1947, sec. 11-964, as follows: "The city or town council has power; to sell, dispose of, or lease any property belonging to a city or town, provided, however, that such lease or transfer be made by ordinance or resolution passed by a two-thirds vote of all the members of the council; and *provided further that if such property ᵒbe held in trust for a specific purpose such sale or lease thereof be approved by a majority vote of taxpayers of such municipality cast at an election called for that purpose;* and provided further that nothing herein contained shall be construed to abrogate the power of the board of park commissioners to lease all lands owned by the city heretofore acquired for parks within the limitations prescribed by sub-division 5 of Section 5162, Revised Codes of Montana of 1935." (Emphasis supplied.) Subdivision 5 of R. C. M. 1947, sec. 62-204, grants the power to the park board, where one is authorized by statute, to lease all lands owned

480

and theretofore acquired for parks, by the city which, in the judgment of the board, it shall not be advisable to improve as parks, and of course this proviso has no application to the lands here involved which are admittedly being improved for park, recreational grounds and golf course purposes.

The purpose of this amendment is manifest. It is to give to the inhabitant taxpayer of the city his right to a voice in the determination of whether or not his equitable title as beneficiary shall be alienated and to bring the proceeding within the constitutional mandate, in regard to improved public trust park property.

Cities and towns are creatures, created by legislative enactments, and this court has held that, "Municipalities have only such powers as are expressly granted." Lazich v. City of Butte, 116 Mont. 386, 390, 154 Pac. (2d) 260, 261. Again the court has stated, quoting from 1 Dillon, Mun. Corp. (5th Ed.), sec. 237, " 'Of every municipal corporation the charter or statute by which it is created is its organic act. *Neither the corporation nor its officers can do any act, or make any contract,* or incur any liability, not authorized thereby or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void'." Milligan v. City of Miles City, supra [51 Mont. 374, 153 Pac. 278], and cases therein cited at page 382. (Emphasis supplied.) See Stephens v. City of Great Falls, 119 Mont. 368, 175 Pac. (2d) 408.

"Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." R. C. M. 1947, sec. 49-105.

What is the public policy of the state, and what is contrary to it, are questions to be determined, not by the private convictions or notions of the persons who happen for the time to be exercising judicial functions, but by reference to the enactments of the law-making power, and, *in the absence of them,* to the decisions of the courts. And when the legislature, exercising its constitutional powers, has spoken upon a particular sub-

ject, its utterance is the public policy of the state on that subject. See State ex rel. McCarten v. Corwin, 119 Mont. 520, at page 529, 177 Pac. (2d) 189 and cases cited; also MacGinniss v. Boston & Montana Consol. Copper & Silver Min. Co., 29 Mont. 428, 75 Pac. 89; United States v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 17 S. Ct. 540, 41 L. Ed. 1007; Parchen v. Chessman, 49 Mont. 326, 334, 142 Pac. 631, 146 Pac. 469, Ann. Cas. 1916A, 681; Board of County Commissioners of Gunnison County v. Buckley, Colo. 1949, 213 Pac. (2d) 608, 611.

While this section R. C. M. 1947, sec. 11-964, as amended by Chapter 35, Laws of 1937, was urged by the plaintiff in Colwell v. City of Great Falls, supra, and relied on by defendants here, this court stated in that case, ''Section 5039.61, supra, was designed to permit the cities and towns of this State, with the approval of a majority vote of their taxpayers, to sell or lease their property which was held in trust for a specific purpose, in abrogation of, or in substantial interference with, the use of the property for such specific purpose. There are no such facts in this case, hence it was not necessary for the defendant city to secure the approval as contemplated by the provisions of Section 5039.61, supra.'' [117 Mont. 126, 157 Pac. (2d) 1022.] In other words, this court found that under the lease there under consideration all rights of the public were protected.

In the case at bar, the lease to the Polson Country Club, even if otherwise legal, contains no provision or provisions safeguarding the rights of the inhabitants of Polson to their use of the property in accordance with the dedication.

Defendants in their brief have cited Chapter 71, Laws of 1939, and appear to rely on its provisions for the leasing of the property in question. However, we find no merit in such contention. Said Chapter 71 applies only to a program of public recreation and playgrounds, but does not apply to the facts and circumstances and conditions here under consideration, as it does not authorize leasing of trust property, nor may the legislature authorize such a city to delegate municipal governmental functions whatever. Sec. 36, Art. V, Montana Constitution; State ex rel.

Brooks v. Cook, 84 Mont. 478, 484, 485, 276 Pac. 958; 43 C. J., "Municipal Corporations," p. 183, sec. 180.

The city of Polson, being a city of the third class, has not been ██ authorized by the legislature to appoint a park board, hence the city council is the only authority given the power to lease, sell and manage its parks.

The authority to maintain and manage and control a public park, that has been dedicated to a city of the third class is essentially a part of the machinery of government of the city necessary to maintain the park for the benefit of the public. It follows as a matter of course that the acts of the city therein are municipal in character, and such may not be delegated. Sec. 36, Art. V, Montana Constitution.

It is apparent that the city of Polson, being the legal owner of the public park and the buildings thereon here involved holds in trust the same for the inhabitants of the city of Polson, who are the equitable owners thereof, and the property being improved park property, limited by private grant and dedicated for special purposes, it may not be used for any other purposes or uses.

The city is expressly empowered by the provisions of Chapter 35, Laws of 1937, to lease any property belonging to it to the Country Club or to any other private corporation, association or person, provided the terms of such lease do not interfere with the use by the inhabitants of the municipality for the purposes for which the property was dedicated and is held in trust. See Colwell v. City of Great Falls, supra.

Such leasing proposition shall be submitted to the taxpayers of the city to be approved by a majority vote cast at a special election called for that purpose. This is the procedure prescribed by our legislature. It therefore constitutes the public policy of the state and the only lawful method of leasing trust property under the facts herein.

The purported lease on which the defendants base their ██ claimed rights has no standing under the law for it was executed by an unauthorized body of men without sanction of

the law, who assumed to, and did usurp the power and prerogatives of the duly constituted and legal council of the city, which alone is clothed with the requisite power and authority under the facts here, to deal with the public trust property of a third-class city of this state, and they may not neglect, abandon, nor surrender their duties as trustees, nor allow nor condone the exercise by someone else of their power relating thereto.

The legislative power vested in municipal bodies cannot be bartered away in such manner as to disable them from the performance of their public functions. Wabash R. Co. v. City of Defiance, 167 U. S. 88, 17 S. Ct. 748, 42 L. Ed. 87; Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314.

"* * * a municipality * * * has no power to enter into contracts which curtail or prohibit an exercise of its legislative or administrative authority * * *." State ex rel. Townsend v. Board of Park Com'rs, 100 Minn. 150, 110 N. W. 1121, 9 L. R. A., N. S., 1045; Nebraska City v. Nebraska City Speed & Fair Ass'n, 107 Neb. 576, 186 N. W. 374, 376, 377.

Counsel for defendants contend that without the revenue from the Polson Country Club it would be impossible for the city of Polson to maintain this property from the possible sources of revenue available to it. While the record in the case does not show the actual or estimated over-all expense of maintaining this park property, or whether the maximum levy allowed by law has been made by the city, yet none can deny that the city of Polson is a very prosperous and fine propertied community, and should its assessed valuation be no more than a million and a quarter dollars, the maximum levy of six mills on each dollar of such assessed valuation, sec. 4, Ch. 71, Laws of 1945, would provide $13,500 annually for the purposes there considered.

Accordingly the purported lease of March 10, 1948, between A. H. Papke, R. S. Stoudt, J. H. Hanson, as the purported park board of the city of Polson, Montana, as first parties, and the Polson Country Club, a corporation, second party, purporting to lease to the second party the lower portion of the clubhouse and the playing area of the golf course on Lot Four, and the

484

northwest quarter of the southwest quarter of section two, township 22 north, range 20 west, M. M., is clearly void and of no effect. "Time does not confirm a void act." R. C. M. 1947, sec. 49-131; State ex rel. Boorman v. State Board of Land Com'rs, 109 Mont. 127, 94 Pac. (2d) 201, 204.

This court, speaking through Chief Justice Brantly, after quoting the statutes conferring powers on cities and towns, said, "* * * by the great weight of authority it is held to be exclusive and to apply to all municipal bodies. It falls within the general rule that, when the Legislature has prescribed the mode by which a given power is to be exercised by a municipality, this mode must be pursued. It is the measure of power on that subject; and any attempt to pursue any other mode fails to bind the municipality at all. Contracts entered into in disregard of the limitations are void." Missoula Street Ry. Co. v. City of Missoula, 47 Mont. 85, 95, 130 Pac. 771, 773.

"It is considered that a contract void in its inception is not validated by performance and remains a void contract." Bechthold v. City of Mauwatosa, 228 Wis. 544, 277 N. W. 657, 280 N. W. 320, 322. See R. C. M. 1947, sec. 59-501.

The legislature has enacted: "That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited * * *" R. C. M. 1947, sec. 13-801. Contracts made in violation of express statutes are contrary to public policy and absolutely and wholly void and of no legal effect. See Lebcher v. Board of Com'rs of Custer County, 9 Mont. 315, 320, 23 Pac. 713, 714; State ex rel. Lambert v. Coad, 23 Mont. 131, 57 Pac. 1092; Missoula Street Ry. Co. v. City of Missoula, supra.

The rule is well stated as, "A void contract is no contract at all; it binds no one and is a mere nullity. * * * It requires no disaffirmance to avoid it and it cannot be validated by ratification. A contract wholly void is void as to everybody whose rights would be affected by it if valid." 12 Am. Jur., "Contracts," sec. 10, p. 507. "A void contract need not be rescinded." 12 Am. Jur., "Contracts," sec. 437, p. 1017.

In 6 R. C. L., Contracts, sec. 98, pp. 692, 693, it is said: "At no time in the history of the common law were contracts in violation of law regarded as valid. * * * A contract, though it may be based on consent, derives its obligatory force from the sanction of the law. It would therefore be anomalous indeed if the law were to sanction contracts which violate the law. * * * The whole doctrine relating to illegal contracts is founded on a regard for the public welfare. In fact, it has been asserted that the maintenance of this doctrine is essential to the preservation of the state." State ex rel. Helena Water Co. v. City of Helena, 24 Mont. 521, 63 Pac. 99, 105, 55 L. R. A. 336, 81 Am. St. Rep. 453.

The order and judgment of the district court perpetually enjoining defendants from operating or attempting to operate thereunder, was and is correct under the law and the facts.

Having reached these conclusions, the other contentions raised need not be considered. The decree and order of the trial court are affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICE METCALF, concur.

MR. JUSTICE FREEBOURN:

I dissent.

The Polson Country Club golf course would be a credit to any community. Its members are entitled to every right enjoyed by other country club members all over Montana.

The complaint and the evidence submitted in support thereof do not warrant the injunction issued.

The deed of the golf course from the country club to the city of Polson was given solely for the purpose of securing federal funds to improve the course and build a clubhouse, a procedure followed in other Montana towns. The parties, by the deed, intended the country club should govern and manage its own property by stating, in the deed, that a commission of three, one councilman and "two * * * members in good standing of the

Polson Country Club" shall "govern and manage said * * * golf course."

MR. JUSTICE ANGSTMAN:

I dissent. There are several propositions advanced in the majority opinion with which I do not agree and the determinative question in the case is not discussed at all. The majority opinion is bottomed upon a proposition not suggested in the briefs or oral argument of counsel and upon an issue not raised by the pleadings. Likewise the opinion, if sound in other respects, does not justify the conclusion reached. In other words, if no valid park board was appointed with power to govern and manage the park, recreational grounds and golf course, then the deed from the Polson Country Club to the city of Polson never became effective and hence the city has no interest in the property.

These questions will now be discussed briefly.

The pleadings do not suggest that the park board was not properly created or that it had no authority to lease the property. On the contrary, the complaint alleges that certain named individuals compose a city park board and this is admitted in the answer. No useful purpose would be subserved by setting forth the allegations of the complaint in detail. The prayer of the complaint shows clearly the purpose of the action. The prayer asks for an injunction restraining the defendants "from operating or conducting a bar and bar room at, in and upon the premises herein involved * * * and from operating any slot machines at, in or upon said premises."

Nowhere in the pleadings is it intimated or suggested that the park board was not duly created or that it had no authority to lease the lands involved. On the contrary, the record shows that no one is complaining of the operation of the golf course as such though operated by the lessee. The sole and only point raised is the right to sell intoxicating liquors on the premises and to operate slot machines thereon.

If the opinion written by Mr. Justice Bottomly is sound in holding that the park board has no valid existence and that

it has no authority to govern and manage the park, recreational grounds and golf course, then the deed to the city never became effective. One of the express conditions of the deed was the following: "This grant is made and accepted * * * upon further condition that the grantee herein will by ordinance or resolution create and provide a park board or commission, consisting of three members to be appointed by the Mayor of the city of Polson, one of whom shall be a member of the city council of the city of Polson, and the other two shall be members in good standing of the Polson Country Club, and that said Park Board or Commission shall be vested with power and authority to govern and manage said park, recreational grounds and golf course and to make reasonable rules and regulations for the use thereof by the public."

The federal government was evidently satisfied with the conditions named in the deed or it would not have advanced the money for the improvements as it did. It evidently thought the law permits the creation of a park board or commission in any city or town and that the right to do so is not restricted to a city of the first or second class.

We ought not now question the proceedings taken by the city of Polson to obtain money from the federal government, particularly when the parties to the action do not question those proceedings. But if we say those proceedings were invalid then the only conclusion which can be reached in the light of the conditions stated in the deed is that the Polson Country Club still owns the property and that the city has no interest therein.

I think we should do as the parties have done, i. e., treat the park board as a valid board with authority to make the lease.

I think the park board was properly appointed. Mayors of cities of the second or third class, R. C. M. 1947, sec. 11-702 and of towns, R. C. M. 1947, sec. 11-703, may appoint such "other officers necessary to carry out the provisions of this title."

And under R. C. M. 1947, sec. 62-209, which was last amended by Chapter 71, Laws of 1945, all cities and towns regardless of size may pass ordinances for the "procurement, establishment,

equipment, maintenance, regulation and operation of * * * playgrounds * * * including the power to establish by ordinance a reasonable and uniform charge for the privilege of using the same. Said city or town council is further authorized in its discretion to place any or all of said institutions under the control and management of the board of park commissioners." Also R. C. M. 1947, sec. 62-212, Ch. 71, sec. 2, Laws of 1939, authorizes the board of park commissioners to operate a program of public recreation independently or "with any cooperating bodies in such manner as they may agree."

I fail to see how section 36 of Article V of the Montana Constitution has any application to questions involved here. It provides: "The legislative assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes, or to perform any municipal functions whatever."

The legislature has not delegated to anyone the right to control the municipal parks and playgrounds. It simply has authorized cities and towns to place their management and control in the board of park commissioners. R. C. M. 1947, sec. 62-209.

This the city of Polson did by ordinance pursuant to the terms of the deed. It accepted the deed subject to the conditions stated in it.

When the board of park commissioners acts with reference to the management and control of the city parks it is the city that is acting by and through its legally constituted board appointed for that purpose. The legislature did not delegate to any special commission power to interfere with any municipal function which section 36 of Article V prohibits, but simply by R. C. M. 1947, sec. 62-209, authorized the city itself to manage and control its parks through its own park board if it cared to do so.

Of course this does not mean that the park board may divert the property to a use other than that contemplated by the trust.

If the property is proposed to be used for other than park,

recreational grounds and golf course, then under the terms of the deed it reverts to the grantor and a vote of the people would not alter this result. A vote of the people would not and could not change the terms of the deed.

R. C. M. 1947, sec. 11-964, has to do with property held in trust for a specific purpose other than that acquired by a deed wherein there was a reversion clause.

The majority is in error in assuming that the city, by section 11-964 (5039.61), may effect a sale or transfer of this property for other than a park, recreational grounds and golf course upon obtaining a favorable vote of the people of Polson. Any attempt to use this property for purposes other than those contemplated by the deed, even by a vote of the people, would cause the property to revert to the grantor.

The rule is stated by McQuillin on Municipal Corporations, Vol. 3, 2nd Ed., sec. 1244, as follows: "When it is said that a municipality may dispose of its property under certain circumstances, it generally refers to cases where no rights of the original grantor or donor of the property are concerned. If a person conveys land to a municipality for a certain definite public purpose, with a reversion if not so used, it cannot be diverted to another and different purpose not connected with the original dedication, since the public takes it in trust for the public purpose designated in the instrument of conveyance."

In Bozarth v. Egg Harbor City, 89 N. J. Eq. 26, 103 A. 405, 409, the court stated the applicable rule as follows: "As defendant municipality took the fee to these open squares under a deed referring to that map and under the express condition that the avenues and public places so conveyed to it should forever remain public for the purposes they had been originally set apart and reserved, these implied covenants are necessarily enforceable against the proposed acts of the municipality which are designed to defeat the restricted use.

"It remains to consider the effect of the legislation already referred to.

"The act of 1890 is designed to discharge 'the conditions, limitations, and restrictions' contained in the deed.

"The act of 1915 is designed to authorize the sale by a municipality of land acquired by it for public use, when the land is no longer needed for such use.

"The question here involved does not include a consideration of the power of the Legislature to yield up the right of the public in land devoted to a public use by dedication. That power appears to be conceded in Trustees of Methodist Episcopal Church at Hoboken v. Mayor, etc., of Hoboken, 19 N. J. Eq. 355, and in Fessler v. Town of Union, 67 N. J. Eq. 14, 25, 56 A. 272. But, where private property rights exist in the nature of an easement touching the use of the land by the owner of the fee, it is obvious that no legislative power can disturb such rights. It is such a private property right that complainant herein asserts and that our Constitution protects."

I disagree therefore with what the majority have to say on the question of obtaining a vote of the people of the city of Polson if, as the majority opinion seems to assume, the property is being used for purposes other than as a park, recreational grounds and golf course. Also if the sale of intoxicating liquor and the use of slot machines does not conflict with the use of the property for a park, recreational grounds, and golf course, then a vote of the people adds nothing. The precise point involved in the case and the only one presented is whether the grounds are being used for purposes other than those contemplated in the deed.

In considering this question it should be said at the outset that there can be no danger of the city losing the property because of the use made of the premises because if it is used contrary to the terms of the deed it is being done by the grantor itself and of course it would be estopped from claiming a reverter.

But I think plaintiff as a taxpayer and regardless of the question of estoppel has the right to raise the question as to whether the property is being used for purposes other than those contemplated in the deed.

In considering that question we must keep in mind that in this

proceeding we may not determine whether any of the acts complained of constitute a crime. That issue, this court has repeatedly held and all parties concede, may not be determined in injunction proceedings.

Plaintiff takes the position that every use for commercial purposes is in violation of the restrictions in the deed. This is not the rule. In 39 Am. Jur., "Parks, Squares and Playgrounds," sec. 23, p. 819, it is said: "Generally, it appears that licenses or special privileges in parks may be granted to individuals in proper circumstances where the exercise of such privileges is in furtherance of park purposes and is not inconsistent with the terms of the dedication. A statute authorizing a city to devote a park to any use tending to promote popular enjoyment and recreation empowers a city to grant to individuals for pay exclusive rights within a park to operate refreshment and lunch stands, and to rent boats, bathing suits, towels and dressing rooms."

And in section 24 the same author says: "Leases of portions of a public park for hotel purposes, for the purpose of selling refreshments, and for the establishment and operation of a race track, have been upheld as not inconsistent with the public use. The use of portions of public parks for agricultural purposes, zoological and botanical gardens, conservatories, and many other similar recreational and educational facilities, has also been held, in various instances, to be a proper and legitimate use." See also note 144 A. L. R. 487.

The Supreme Court of Missouri in State ex rel. Wood, Attorney General, v. Schweickardt, 109 Mo. 496, 19 S. W. 47, 51, held that the grant of a permit to sell intoxicating liquors in a park is not a diversion of the legitimate use of a park. The court in speaking of the question said: "It seems, too, to be a matter of common knowledge that refreshments, both solid and liquid, refreshments of an intoxicating nature, are customarily served to visitors of the great parks of this country,—Central park, New York; Fairmont park, Philadelphia; and Golden Gate park, in San Francisco. On this basis of fact and of custom it cannot be

regarded as any diversion of the legitimate uses of the park to have refreshments served in the manner contemplated by the ordinance and contract aforesaid. A park of the dimensions of the one in question, situate some 4½ miles from a great metropolis of half a million people; a park containing a territorial area of some 1,374 acres,—must be regarded as a little world in and of itself; one in which should be exhibited the same degree of charitable forebearance and toleration of the tastes and habits of others as is required in the larger world of current life. And, so long at the proprieties of life are observed, no one of the throng who visit such a locality has any grounds to insist that his method of conducting a park should be adopted instead of the plan deemed best by the regularly constituted authorities. Such intolerance, on whatever motives based, is at war with the theory and practice of our government and an enlightened civilization. Its voice should not prevail in a court of justice. And in this connection it should be constantly borne in mind that within the legitimate sphere of their authority the discretion confided to municipal corporations is as proportionately wide as is a like discretion possessed by the government of the state, and as free from outside interference; and that discretion is not subject to judicial revision or reversal. (Citing cases.) "

As to whether I would agree with all that was held in that case and whether I think the same rule would permit the use of slot machines, I express no opinion since in my view the case should be remanded for further proceedings.

The reason I think the case should be remanded for further proceedings is this: After the judgment was entered plaintiff's counsel in submitting objections to exceptions made to certain findings, called attention to a city ordinance of the city of Polson prohibiting the sale of intoxicating liquor in or upon any park or public grounds.

A city may prohibit such sales if it so desires. Note in 105 A. L. R. 1052.

The difficulty on this score is that this ordinance was not pleaded and in fact it was not introduced in evidence. We are

asked to take judicial notice of the ordinance. But this we may not do. Carey v. Guest, 78 Mont. 415, 258 Pac. 236; Dineen v. City of Butte, 83 Mont. 370, 272 Pac. 243.

The necessity of pleading it is apparent. The adversary may desire to question its validity. It may have been repealed by a later ordinance.

Other questions may arise regarding its applicability which defendants should have the opportunity to be heard on.

In my opinion the cause should be remanded for further proceedings with the right of plaintiff to plead the ordinance if he chooses to rely upon it.

Rehearing denied March 23, 1950.